MOSES & SINGER LLP
MICHAEL EVAN AVIDON #N.Y.S. Reg. No. 1722602
mavidon@mosessinger.com
MARK N. PARRY #N.Y.S. Reg. No. 1862465
mparry@mosessinger.com
DAVID RABINOWITZ #N.Y.S. Reg. No. 1079946
drabinowitz@mosessinger.com
ROBERT MCFARLANE #N.Y.S. Reg. No. 5140603
rmcfarlane@mosessinger.com
405 Lexington Avenue, 12th Floor
New York, NY 10174-1299
Telephone: 212-554-7825
Facsimile:  212-554-7700
*Pro Hac Vice*

PARKER IBRAHIM & BERG LLP
JOHN M. SORICH #125223
John.Sorich@piblaw.com
HEATHER E. STERN #217447
Heather.Stern@piblaw.com
MATTHEW HENDERSON #274252
Matthew.Henderson@piblaw.com
695 Town Center Drive, 16th Floor
Costa Mesa, CA 92626
Telephone: 714.361.9550
Facsimile: 714.784.4190

Attorneys for defendant JPMORGAN CHASE BANK, N.A.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| ZIONS BANCORPORATION, N.A. dba CALIFORNIA BANK & TRUST, a National Association,<br><br>Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A., a Delaware corporation,<br><br>Defendant. | CASE NO.: 3:20-cv-2048-AJB-JLB<br><br>JUDGE: Hon. Anthony J. Battaglia<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANT JPMORGAN CHASE BANK, N.A. TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, FOR** |
| --- | --- |

1

**FAILURE TO STATE A CLAIM FOR RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**DATE:  January 21, 2021**
**TIME:   2:00 p.m.**
**DEPT.:  4A (4th Flr)**

**TO THE HONORABLE COURT, TO ALL PARTIES AND THEIR COUNSEL OF RECORD HEREIN:**

**PLEASE TAKE NOTICE** that on January 21, 2021, at 2:00 p.m., in Courtroom 4A, 4th Floor, of the above-entitled court, located at 221 West Broadway, San Diego, CA 92101, defendant JPMorgan Chase Bank, N.A., ("Defendant" or "JPMC") will and hereby does move to dismiss the complaint of plaintiff Zions Bancorporation, N.A. d/b/a California Bank & Trust ("Plaintiff"), pursuant to Rule 12(b)(2) of Federal Rules of Civil Procedure ("FRCP") for lack of personal jurisdiction or, in the alternative, pursuant to Rule 12(b)(6) of the FRCP for failure to state a claim (the "Motion").

Specifically, the Motion will be made as to the following and on the following grounds:

1.     The entire action should be dismissed because there is no personal jurisdiction over this Defendant.

2.     In the alternative, the claims for "Breach of Contract" and "Declaratory Relief" should be dismissed because they fail to state facts sufficient to constitute a claim for relief pursuant to FRCP 12(b)(6).

The Motion to Dismiss will be based on this Notice of Motion and the Motion, the Memorandum of Points and Authorities, Declaration of Henry J. Pfeiffer, Request

///

///

///

for Judicial Notice, all documents, records and pleadings on file, and any evidence and/or oral argument presented at the time of hearing on this matter.

Dated:  November 23, 2020                    Respectfully submitted,

MOSES & SINGER LLP

By: */s/ Mark N. Parry*
    MICHAEL EVAN AVIDON
    MARK N. PARRY
    DAVID RABINOWITZ
    ROBERT MCFARLANE

**and**

PARKER, IBRAHIM & BERG LLP

By: */s/ Heather E. Stern*
    JOHN M. SORICH
    HEATHER E. STERN
    MATTHEW HENDERSON

Attorneys for defendant JPMorgan Chase Bank, N.A.

# Table of Contents

I.     SUMMARY OF ARGUMENT ................................................................. 1

II.    SUMMARY OF RELEVANT FACTS .................................................. 2

III.   THE COURT SHOULD DISMISS THIS ACTION FOR LACK OF PERSONAL JURISDICTION .......................................................... 4

    A.   Applicable Law ........................................................................ 4

    B.   General Personal Jurisdiction Over JPMC Does Not Exist Here ........ 6

    C.   There Is No Basis For Specific Personal Jurisdiction Over JPMC ...... 8

IV.    IN THE ALTERNATIVE, THIS ACTION SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ........................................ 12

    A.   New York Substantive Law Applies To Plaintiff's Claims ............... 12

    B.   Plaintiff's Breach Of Contract Claim Is For Wrongful Dishonor ..... 14

    C.   Plaintiff's Claims Are Barred By The Applicable Statute Of Limitations ........................................................................... 15

    D.   Plaintiff Lacks Standing To Sue ........................................... 17

        1.   Plaintiff Is Not The "Beneficiary" Or "Transferee" Of The LC ................................................................................ 18

        2.   Plaintiff Is Not A "Successor" Or "Nominated Person" .......... 21

    E.   Plaintiff's Claim For "Declaratory Relief" Must Be Dismissed As Duplicative .................................................................... 22

    F.   Leave To Amend Should Be Denied ...................................... 23

V.     CONCLUSION ...................................................................... 24

## Table of Authorities

### Cases

*Algemene Bank Nederland, N.V. v. Soysen Tarim Urunleri Dis Ticaret Ve Sanayi, A.S.*, 748 F. Supp. 177, 181–82 (S.D.N.Y. 1990) ........................ 19, 20

*AM Trust v. UBS AG*, 681 Fed. Appx. 587 (9th Cir. 2017) ........................................ 7

*Am. Express Travel Related Servs. Co. v. Sevier County Bank*, Case No. Case No. 2:10-CV-841 TS, 2011 U.S. Dist. LEXIS 16536 at *12 (D. Utah Feb. 17, 2011) ................................................................................ 11

*Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 301, 312 (S.D.N.Y. 2010) ......... 23

*Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) ................................................................ 12

*Banco Nacional De Mexico, S.A. v. Societe Generale*, 34 A.D.3d 124, 130, 820 N.Y.S.2d 588 (1st Dept. 2006) ........................................................ 13, 14

*Bath Iron Works Corp. v. WestLB*, No. 02 Civ. 2272 RCC, 2004 U.S. Dist. LEXIS 19206, at *2 (S.D.N.Y. Sept. 27, 2004) ........................................ 15

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) .................................... 12

*Brainerd v. Governors of the University of Alberta*, 873 F.2d 1257, 1258 (9th Cir. 1989) ............................................................................................ 5

*Bristol-Myers Squibb Co. v. Superior Court,* U.S., 137 S. Ct. 1773, 1783 (2017) ............................................................................................ 11

*Cal. Ins. Guarantee Ass'n v. Superior Court*, 231 Cal. App. 3d 1617, 1623-24 (1991) ...................................................................................... 23

*Chandler v. Barclays Bank, PLC*, 898 F.2d 1148, 1151 (6th Cir. 1990) ................ 10

*Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) ...................... 12

*CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1074 (9th Cir. 2011) ........................................................................................ 6, 9

*CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1141 (9th Cir. 2010) ...................... 13

*Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) ............................................ 5, 6, 7

*Die–Matic Tool Co. v. Advanced Air Support Servs., Inc.*, No. 90 Civ. 7001 (PNL), 1993 U.S. Dist. LEXIS 2854, at *7 (S.D.N.Y. Mar. 11, 1993) ....... 21

*Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) .......................................... 5

*Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005) ............................ 12

*Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d 299 (9th Cir. 1986) ............................................................................................ 9

*First Metro Bank v. Cent. Bank*, 904 F. Supp. 2d 1215, 1224 (N.D. Ala. 2012) ..... 11

ii

*First Nat'l Bank of Pa. v. Transamerica Life Ins. Co.*, Civil Action Case No. 14-1007, 2016 U.S. Dist. LEXIS 16170 *13-22 (W.D. Penn. Feb. 10, 2016) ........................................................................................ 7, 8

*Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436, 63 Cal. Rptr. 3d 816, 827 n. 7 (2007) ........................................................ 13

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) ........ 6

*H. Ray Baker, Inc. v. Associated Banking Corp.*, 592 F.2d 550, 552 (9th Cir. 1979) ..................................................................................... 10

*Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182 (9th Cir. 2009) ........................... 13, 15

*Hatheway v. Bank of N.Y. Mellon*, Case No. CV-18-08332-PCT-DLR, 2019 U.S. Dist. LEXIS 93369 (D. Ariz. June 4, 2019) .............................. 8

*Hoffman v. Citibank (S. Dakota), N.A.*, 546 F.3d 1078, 1082 (9th Cir. 2008)......... 12

*Hughes Elecs. Corp. v. Citibank Del.*, 120 Cal. App. 4th 251, 15 Cal. Rptr. 3d 244, 248 (2004) ...................................................... 13

*Inter Impex S.A.E. v. Comtrade Corp.*, No. 00 Civ. 0133, 2004 U.S. Dist. LEXIS 24431 at *9 (S.D.N.Y. Dec. 6, 2004).................................................... 21

*International Shoe Co. v. Washington*, 326 U.S. 310, 316-317 (1945) .................... 4

*Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 45 Cal. Rptr. 3d 730, 137 P.3d 914, 922 (Cal. 2006) ................................. 13

*Leney v. Plum Grove Bank*, 670 F.2d 878, 881 (10th Cir. 1982) ........................... 10

*Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 688 (9th Cir. 1993) ................ 17

*Linlor v. JPMorgan Chase & Co.*, Case No. 17-cv-00005-BEN-KSC, 2017 U.S. Dist. LEXIS 127383 (S.D. Cal. Aug. 9, 2017) ......................... 7

*Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)............................................. 24

*Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014)...................... 5, 6

*Moog World Trade Corp. v. Bancomer, S.A.*, 90 F.3d 1382 (8th Cir. 1996) .......... 10

*MSF Holding Ltd. v. Fiduciary Tr. Co. Int'l*, 435 F. Supp. 2d 285 (S.D.N.Y. 2006), *aff'd on other grounds*, 235 F. App'x 827 (2d Cir. 2007) .................................................................................... 20, 21

*Nassar v. Fla. Fleet Sales Inc.*, 79 F. Supp. 2d 284, 293 (S.D.N.Y. 1999).............. 19

*Nationwide Eng'g & Control Sys. v. Thomas*, 837 F.2d 345, 347-48 (8th Cir. 1988)........................................................................................ 5

*Oppenheimer v. General Cable Corp.*, 143 Cal. App. 2d 293, 297 (1956) ............. 23

*Pacific Reliant Industries, Inc. v. Amerika Samoa Bank*, 901 F.2d 735 (9th Cir. 1990).................................................................................. 10

*Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 577 (9th Cir. 2018)............. 8

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006) .......................... 5

*Peterson v. Kennedy*, 771 F.2d 1244 (9th Cir. 1985) ................................................ 11

*Press v. Monroe Cty.*, 50 N.Y.2d 695, 701, 409 N.E.2d 870, 872 (N.Y. 1980)....... 16

*Ruhrgas Ag v. Marathon Oil Co.*, 526 U.S. 574 (1999)............................................. 5

*RZS Holdings, AVV v. Commerzbank*, 279 F.Supp.2d 716 (E.D. Va. 2003) ..... 10, 11

*San Diego Gas & Electric Co. v. Bank Leumi*, 42 Cal. App. 4th 928,
    935 (1996) ............................................................................................................. 15

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393,
    1401 (9th Cir. 1986) .............................................................................................. 24

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004)....... 6

*Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 249–50
    (S.D.N.Y. 2006) ..................................................................................................... 23

*Superfos Invs. Ltd. v. FirstMiss Fertilizer, Inc.*, 774 F. Supp. 393,
    397–98 (E.D. Va. 1991) ......................................................................................... 11

*United States Bank Nat'l Ass'n v. Bank of Am., N.A.*, Case No.
    1:14-cv-01492-TWP-DKL, 2015 U.S. Dist. LEXIS 139597 *16-18
    (S.D. Ind. Oct. 14, 2015) ........................................................................................ 8

*Village Lane Rentals, LLC v. Capital Fin. Group*, 159 F. Supp. 2d
    910, 915 (W.D. Va. 2001) ...................................................................................... 11

*Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006).............................................. 7

*Walden v. Fiore*, 571 U.S. 277, 284 (2014)......................................................... 6, 10

**Statutes**

Cal. Code Civ. Proc. § 410.10 ..................................................................................... 5

Cal. Com. Code § 5115................................................................................................ 16

Cal. Com. Code § 5116................................................................................................ 13

N.Y. U.C.C. § 5-102 ...................................................................................... 18, 21, 22

N.Y. U.C.C. § 5-107 ................................................................................................... 14

N.Y. U.C.C. § 5-109 ................................................................................................... 22

N.Y. U.C.C. § 5-111 ................................................................... 14, 15, 17, 18, 21, 22

N.Y. U.C.C. § 5-112 ................................................................................................... 19

N.Y. U.C.C. § 5-114 ................................................................................................... 20

N.Y. U.C.C. § 5-115 ............................................................................... 16

N.Y. U.C.C. § 5-116 ............................................................................... 13

U.C.C. § 5-111 ...................................................................................... 15

U.C.C. § 5-115 ...................................................................................... 17

U.C.C. § 5-116 ...................................................................................... 13

**Rules**

Fed. R. Civ. Proc. 4 ................................................................................. 5

Fed. R. Civ. Proc. 12 ..................................................................... 2, 4, 5, 12

**Other Authorities**

J. Dolan, *The Law of Letters of Credit* (2020) at § 10.01 ................................... 19, 20

J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 26:7 (6th ed. 2019) ................................................................. 18

New York State Bar Association Committee Report on U.C.C. Revised Article 5 ........................................................................................ 22

Official Comment 10 to U.C.C. § 5-102 ..................................................... 22

Official Comment to U.C.C. § 5-111 ......................................................... 17

Official Comment to U.C.C. § 5-115 ......................................................... 16

Uniform Customs and Practice for Documentary Credits, 2007 revision, International Chamber of Commerce Publication No. 600, Art. 38(b) .......... 18, 19

Uniform Customs and Practice for Documentary Credits, 2007 revision, International Chamber of Commerce Publication No. 600, Art. 39 ......... 19, 20, 21

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant JPMorgan Chase Bank, N.A. ("Defendant" or "JPMC") hereby submits the following points and authorities in support of its motion to dismiss the complaint ("Complaint") of plaintiff Zions Bancorporation, N.A. d/b/a California Bank & Trust ("Plaintiff") for lack of personal jurisdiction or, in the alternative, for failure to state a claim for relief.

## I.    SUMMARY OF ARGUMENT

This case involves a letter of credit (the "LC") issued by a Brazilian bank for a Brazilian applicant to secure payment for goods to be shipped from the port of Houston, Texas to any port in Brazil. JPMC's New York office confirmed the LC (the "Confirmation") and instructed the beneficiary, a company based in Orange County, to make presentment at JPMC's office in Tampa, Florida. Presentment then occurred at JPMC's Tampa, Florida office. Plaintiff, a national bank headquartered in Utah, has now filed this suit seeking to recover amounts it claims to be owed under the LC. The Complaint does not allege any facts whatsoever relating to this District. Plaintiff's cherry-picking of this jurisdiction without any connection to the subject dispute should therefore be rejected and the Complaint dismissed on that basis alone.

While JPMC is a national bank with local branches, the United States Supreme Court has made clear that this does not give Plaintiff *carte blanche* to sue JPMC anywhere it chooses. JPMC is not subject to general jurisdiction under well-settled precedent because it is neither incorporated in California nor does it maintain its principal place of business in California. Any effort to plead specific jurisdiction likewise fails because the Complaint does not allege a single act of purposeful availment by JPMC of this forum, nor does it allege any events that even arguably arose out of JPMC's forum-related activities. Further, as a longstanding matter of law, neither the beneficiary's location in Orange County, California, nor any ties its purported assignee, Plaintiff, headquartered in Utah, may claim to have to this

jurisdiction, constitute a basis for haling JPMC into this Court.

In the alternative, in the event this Court determines that it has personal jurisdiction over JPMC, this action should be dismissed for failure to state a claim for relief.  Plaintiff purports to plead mirror-image claims for "breach of contract" and "declaratory relief" based on a theory that, in 2017, JPMC refused to honor the Confirmation.  However, there is no alleged contract between Plaintiff, as purported assignee of the proceeds of the LC, and JPMC, as confirming bank.  Rather, Plaintiff's claims are for wrongful dishonor of the LC.  Such claims are time-barred by New York's (and California's) one-year statute of limitations on claims for wrongful dishonor of a letter of credit.

Finally, Plaintiff's Complaint suffers from yet another fatal defect that provides a separate and independent basis for dismissal: Plaintiff is neither the beneficiary, transferee, nor successor beneficiary of the LC, and therefore does not have standing under contractually governing New York law to bring suit for wrongful dishonor of the LC.

For these reasons, as shown further below, there is no basis for this Court to exercise general or specific personal jurisdiction over JPMC in relation to this dispute, and in any event, this action should be dismissed for failure to state a claim.

## II.    SUMMARY OF RELEVANT FACTS

Plaintiff is a national banking association headquartered in Utah that has a division doing business as "California Bank & Trust."  *See* Complaint ¶ 12; Request for Judicial Notice ("RJN") Exh. 2.  Defendant JPMC is a national banking association headquartered in Ohio.  RJN Exh. 3.

As alleged in the Complaint, this dispute "arises from the international business dealings" of an alternative energy company, FirmGreen Energy International Holdings, Inc. ("FirmGreen").  Complaint ¶¶ 2, 16.  Specifically, FirmGreen agreed to sell certain equipment to a Brazilian company, Gas Verde, S.A. ("Gas Verde"), which equipment was to be shipped from the port of Houston,

Texas to any port in Brazil for use in the development of a biogas purification plant near Rio de Janeiro. *Id*. ¶¶ 3, 17, Exh. 1 at p. 6.

As part of the payment arrangements, Gas Verde, as applicant, obtained the LC from its bank in Brazil, Banco Bradesco, S.A. ("Banco Bradesco") for the benefit of FirmGreen. *Id*. ¶¶ 3, 18-19. In addition, by SWIFT message sent from "CHASUS33," JPMC agreed to act as confirming bank on the LC. *Id*. ¶¶ 4, 20, 25, Exh. 1 at pp. 5-6. The SWIFT code "CHASUS33" corresponds to JPMC's New York office. RJN Exh. 1; Declaration of Henry J. Pfeiffer ("Pfeiffer Decl.") ¶ 7. Among other things, the JPMC Confirmation states "Our obligations, if any, under this Letter of Credit shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to principles of conflict of laws." Complaint, Exh. 1 at p. 12.

The Complaint further attaches instructions from JPMC as confirming bank on letterhead from JPMC's offices in Chicago, Illinois. Complaint, Exh. 1. In those instructions, among other things, JPMC states that beneficiary's drawing documents are to be presented to JPMC's Tampa, Florida office. *Id*., Exh. 1 at p. 3. JPMC also states explicitly that as confirming bank: "We must comply with all . . . laws and regulations of the U.S. and of other applicable jurisdictions . . . . Should documents be presented involving any country, entity, vessel or individual listed in or otherwise subject to any application restriction, we shall not be liable for any delay or failure to pay, process or return such documents . . . ." *Id*., Exh. 1 at p. 4.

The LC was issued on or about April 1, 2016. *Id.* ¶ 19. The initial maturity date of the LC was to be December 12, 2016, but was subsequently extended to March 13, 2017. *Id*. ¶ 26.

According to the Complaint, in or about October 2016, Plaintiff and FirmGreen entered into a Discount Agreement (the "Discount Agreement") pursuant to which Plaintiff purportedly purchased FirmGreen's right, if any, to receive payment under the LC. *Id.* ¶ 21.

Thereafter, Gas Verde obtained an injunction from a Brazilian court (the "Brazilian Order") restraining and prohibiting Banco Bradesco and JPMC (which has a presence in Brazil) from making payment under the LC and the Confirmation on the basis of fraud in the underlying transaction. *Id*. ¶¶ 10, 29, 31; RJN Exhs. 4-5. As noted in the decision on the interlocutory appeal of the Brazilian Order, there were "serious disparities" in the documents at issue in the underlying transaction, including a "notorious controversy about the correct amount specified in the invoice," and "at the very least, a serious documentary error . . . ." RJN Exhs. 8-9.

The draw documents were presented to JPMC's Tampa, Florida office for payment. Pfeiffer Decl., ¶ 6. According to the Complaint, JPMC supposedly "dishonored" the LC in March of 2017 "by refusing to pay" on the Confirmation, on the basis that JPMC "could not make the payment at that time because of the Injunction." Complaint ¶¶ 28, 31.

Now, over three years later and having had full knowledge of the Brazilian Order since it was entered in 2017, Plaintiff has filed this action in San Diego Superior Court to try to obtain an order forcing JPMC to pay the LC – even though JPMC is still enjoined from doing so by the Brazilian Order.[1] *Id*. ¶¶ 10-11.

On October 16, 2020, JPMC removed this action to this Court on the basis of diversity jurisdiction. This Motion timely follows.

## III.   THE COURT SHOULD DISMISS THIS ACTION FOR LACK OF PERSONAL JURISDICTION

### A.   Applicable Law

As a prerequisite for this Court to hear this matter, the Court must have personal jurisdiction over JPMC. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316-317 (1945). If the Court does not have personal jurisdiction, the Complaint must be dismissed. *See* Fed. R. Civ. Proc. 12(b)(2). Further, a defendant

---

[1] The injunction was modified in August of 2020 to allow 50% of the LC to be paid, but otherwise remains in effect. RJN Exhs. 6-7.

1   can challenge the existence of personal jurisdiction after removing a state case to

2   federal court.  *See, e.g., Ruhrgas Ag v. Marathon Oil Co.*, 526 U.S. 574 (1999);

3   *Nationwide Eng'g & Control Sys. v. Thomas*, 837 F.2d 345, 347-48 (8th Cir. 1988)

4   ("Removal, in itself, does not constitute a waiver of any right to object to lack of

5   personal jurisdiction").

6         When a defendant moves to dismiss under Rule 12(b)(2), the plaintiff bears

7   the burden of demonstrating that the court may properly exercise personal

8   jurisdiction over the defendant.  *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151,

9   1154 (9th Cir. 2006); *see also Brainerd v. Governors of the University of Alberta*,

10  873 F.2d 1257, 1258 (9th Cir. 1989) (Plaintiff "must make a prima facie showing of

11  personal jurisdiction to avoid dismissal.").  In ruling on the Motion, the Court may

12  consider the allegations of the Complaint and judicially noticed facts, as well as

13  "evidence presented in affidavits to assist it in its determination and may order

14  discovery on the jurisdictional issues." *Doe v. Unocal Corp.*, 248 F.3d 915, 922

15  (9th Cir. 2001).

16        On the merits of a Rule 12(b)(2) motion, federal courts follow state law in

17  determining the bounds of their jurisdiction over persons.  *See* Fed. R. Civ. Proc.

18  4(k)(1)(A).   Under California's long-arm statute, California state courts may

19  exercise personal jurisdiction "on any basis not inconsistent with the Constitution of

20  this state or of the United States."  Cal. Code Civ. Proc. § 410.10.  California's

21  long-arm statute allows the exercise of personal jurisdiction to the full extent

22  permissible under the U.S. Constitution, but no further.  *See Daimler AG v.*

23  *Bauman*, 571 U.S. 117, 125 (2014).

24        Under the U.S. Constitution, due process limits the power of a state's courts

25  to exercise jurisdiction over defendants who do not consent to jurisdiction.  *See*

26  *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014).  There are two

27  kinds of personal jurisdiction that a state's courts may exercise over an out-of-state

28  defendant consistent with due process: (1) "general jurisdiction," which allows a

defendant to be generally haled into court in the forum state to answer for its activities, even if those activities are not connected to the forum state; and (2) "specific jurisdiction," which exists when the case arises out of or relates to the defendant's contacts with the forum state. *Id.* In either instance, the inquiry is "defendant-focused," and not based on any contacts the plaintiff (or third parties) may have had with the forum state. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014).

As set forth below, this Court does not have general personal jurisdiction over JPMC nor does it have specific personal jurisdiction over JPMC. Accordingly, the Court should grant the Motion and dismiss this action.

**B.    General Personal Jurisdiction Over JPMC Does Not Exist Here**

As the United States Supreme Court's recent precedent makes clear, the "paradigm" for general personal jurisdiction to exist over a corporate defendant is in the defendant's state of incorporation or principal place of business. *Daimler AG v. Bauman*, 571 U.S. at 137-138 & n.19; *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) ("A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to ***render them essentially at home*** in the forum State.") (emphasis added).

Only in an "exceptional case" will *general* jurisdiction be available in a state that is *not* the defendant's residence. *Daumer AG v. Bauman*, 571 U.S. at 138 n.19. *See also Martinez v. Aero Caribbean*, 764 F.3d at 1070 (same). "The standard for general jurisdiction 'is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1074 (9th Cir. 2011) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004)).

A national banking association's state of residency is where "its main office,

as set forth in its articles of association, is located." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006).   Here, as JPMC's articles of association conclusively establish, JPMC's main office is in Columbus, Ohio, *not* California, and thus JPMC's "home" state is Ohio, *not* California.   *See* RJN Exh. 3.   The Complaint does not even attempt to allege that JPMC is a California resident (nor could it); that issue, therefore, is not in dispute.[2]

Plaintiff alleges the existence of branch offices here and that JPMC conducts business here.   *See* Complaint ¶ 14.   However, these allegations are not sufficient to justify this action as an "exceptional case" where JPMC can be haled *carte blanche* to this Court with no other connection of this jurisdiction to this dispute.   *See Linlor v. JPMorgan Chase & Co.*, Case No. 17-cv-00005-BEN-KSC, 2017 U.S. Dist. LEXIS 127383 (S.D. Cal. Aug. 9, 2017) (no allegations about JPMorgan Chase & Co.'s contacts with the State of California to justify treating this as an "exceptional case" where the court would have general personal jurisdiction over defendant). Indeed, the Ninth Circuit has rejected a rule that would subject a large bank to general personal jurisdiction in any state in which the bank does business and maintains a branch because, as *Daimler* explained, "[a] corporation that operates in many places can scarcely be deemed at home in all of them."   *See AM Trust v. UBS AG*, 681 Fed. Appx. 587 (9th Cir. 2017) (denying discovery on jurisdiction because plaintiff has not demonstrated that there is general personal jurisdiction in California over UBS, even though UBS maintained a branch and does business in the forum state) (quoting *Daimler AG v. Bauman*, 571 U.S. at 762 n.20).

Post-*Daimler*, other courts have reached similar rulings.   *See, e.g., First Nat'l Bank of Pa. v. Transamerica Life Ins. Co.*, Civil Action Case No. 14-1007, 2016

---

[2] The Complaint erroneously alleges that JPMC is a "Delaware Corporation, headquartered in New York, New York." Complaint ¶ 13.   As shown in JPMC's Articles of Association (RJN Exh. 3), this is not accurate, but in any event, there is no allegation that JPMC's place of incorporation or headquarters is in the State of California.

U.S. Dist. LEXIS 16170 *13-22 (W.D. Penn. Feb. 10, 2016) (no general personal jurisdiction over JPMorgan Chase in Pennsylvania despite, *inter alia*, being federally chartered and having an office in state, transacting credit card business with in-state residents, and filing lawsuits in state); *United States Bank Nat'l Ass'n v. Bank of Am., N.A.*, Case No. 1:14-cv-01492-TWP-DKL, 2015 U.S. Dist. LEXIS 139597 *16-18 (S.D. Ind. Oct. 14, 2015) (no general personal jurisdiction over Bank of America in Indiana despite branches, loans, properties, deposits, and other operations in state), *rev'd,* 916 F.3d 143, 149 (2nd Cir. 2019) (reversing only on the ground of specific personal jurisdiction, which was found by appellate court to exist, and refusing "to consider Plaintiff's less persuasive arguments that Bank of America was also subject to general Indiana jurisdiction"); *Hatheway v. Bank of N.Y. Mellon*, Case No. CV-18-08332-PCT-DLR, 2019 U.S. Dist. LEXIS 93369 (D. Ariz. June 4, 2019) (no general personal jurisdiction over Bank of NY Mellon in Arizona because Arizona is neither its state of incorporation nor principal place of business).

For these reasons, there is no basis to exercise general personal jurisdiction over JPMC and the Court should grant this Motion on this basis.

**C.    There Is No Basis For Specific Personal Jurisdiction Over JPMC**

To determine whether specific personal jurisdiction comports with due process, courts engage in a "three-part test":  (1) the defendant must have done some act purposely to avail himself of the privilege of conducting activities in the forum; (2) the claim must arise out of the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable.  *Fields v. Sedgwick Associated Risks, Ltd*., 796 F.2d 299 (9th Cir. 1986); *see also Pakootas v. Teck Cominco Metals, Ltd*., 905 F.3d 565, 577 (9th Cir. 2018).

This test cannot be satisfied here.  The Complaint does not allege a single act of purposeful availment by JPMC of this forum, nor does it allege any events that even arguably arose out of JPMC's forum-related activities.  *See* Complaint at ¶ 14.

Instead, as the allegations in the Complaint reflect, this dispute involves a letter of credit issued by a Brazilian bank, for a Brazilian company-applicant, to a California beneficiary as part of payment for a shipment from Houston, Texas to Brazil, which ultimately was not paid because the Brazilian Order enjoined payment. *See* Complaint, Exh. 1. Regarding JPMC's role as confirming bank, the documents attached to the Complaint arguably show the involvement of JPMC's Chicago, New York, and Tampa offices – but they do not plead any conduct of JPMC whatsoever by which JPMC can be said to have purposefully availed itself of this forum. *Id.*

On the third prong of reasonableness, courts in the Ninth Circuit consider a seven-factor balancing test when addressing the question of reasonableness: (1) the extent of the defendant's purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *See CollegeSource, Inc. v. Academyone, Inc.*, 653 F.3d at 1079.

Here, there are no allegations that JPMC purposefully injected itself into the forum state's affairs and it would be burdensome for JPMC to have to defend itself here in light of the circumstances. Among other things, none of JPMC's witnesses are located here, none of the events occurred here, and it would be inefficient and costly to have this action proceed here. Nothing in the allegations of the Complaint shows any special importance of this dispute to the State of California. None of the parties is a California resident and, indeed, the Confirmation stipulates that New York law shall apply. *See* Complaint, Exh. 1 at p. 12. Moreover, there exist multiple alternative fora, for example, a court in New York, and Plaintiff could just as conveniently obtain effective relief in that court. While Plaintiff may desire a San Diego court for its own unarticulated reasons, Plaintiff cannot show that due

process would be satisfied if Defendant were haled into this Court.  Accordingly, all of the applicable factors demonstrate no personal jurisdiction exists.

To the extent that Plaintiff argues that the residence of the *non-party beneficiary* FirmGreen in Orange County, California somehow generates a basis for jurisdiction here, any such argument should be rejected.  Not only is FirmGreen not a party, but even if it were, a beneficiary's status as a resident of the forum state is not sufficient to establish personal jurisdiction over a bank involved in issuing or confirming a letter of credit for the benefit of the beneficiary.  *See Pacific Reliant Industries, Inc. v. Amerika Samoa Bank*, 901 F.2d 735 (9th Cir. 1990) (no personal jurisdiction over foreign bank simply because it issued a letter of credit in favor of a local beneficiary; collecting authorities); *H. Ray Baker, Inc. v. Associated Banking Corp.*, 592 F.2d 550, 552 (9th Cir. 1979) (California court has no jurisdiction over Philippine issuer of letter of credit payable in New York); *see also Moog World Trade Corp. v. Bancomer, S.A.*, 90 F.3d 1382 (8th Cir. 1996) ("[A] bank issuing a commercial letter of credit at the request of its customer, payable at the bank's offices, does not without more subject itself to personal jurisdiction in a distant forum, such as a court where the letter of credit beneficiary resides."); *Chandler v. Barclays Bank, PLC*, 898 F.2d 1148, 1151 (6th Cir. 1990) (Michigan court has no jurisdiction over Egyptian issuer of a letter of credit payable at confirming bank in New York); *Leney v. Plum Grove Bank*, 670 F.2d 878, 881 (10th Cir. 1982) (improper to "subject any bank that issues a letter of credit to suit in any state in which the bank ... expect[ed] the credit to be used to buy goods or real estate"); *RZS Holdings, AVV v. Commerzbank*, 279 F.Supp.2d 716, 721-722 (E.D. Va. 2003) (no personal jurisdiction over London-based bank in Virginia even though the beneficiary of the letter of credit was located in Virginia).[3]

---

[3] Moreover, here, the beneficiary is not even a party to this litigation, which is an additional reason why the residency of the beneficiary has no significance.  *See Walden v. Fiore*, 571 U.S. at 286 ("[A] defendant's relationship with a . . . third

10

1    Notably, Plaintiff alleges there were "communications" with JPMC by

2 authenticated SWIFT messages.  *See* Complaint ¶ 25.  However, communications

3 sent by the confirming bank to the beneficiary (or in this case, purported assignee),

4 in the forum state also would not establish a basis for personal jurisdiction over the

5 confirming bank in the forum state.  *See RZS Holdings, AVV v. Commerzbank*, 279

6 F. Supp. 2d at 722 ("Despite the fact that Defendant contacted Plaintiff in Virginia

7 with regard to the letter of credit, the Court is left unconvinced that this contact—

8 phone calls and fax transmissions—comprised an effort by Defendant to avail itself

9 of the privilege of conducting business in Virginia."); *Village Lane Rentals, LLC v.*

10 *Capital Fin. Group*, 159 F. Supp. 2d 910, 915 (W.D. Va. 2001) ("In fact, it has

11 generally been held that, 'mere phone calls and letters, and arguably fax

12 communications, in furtherance of a transaction, are insufficient to form a basis for

13 personal jurisdiction'") (quoting *Superfos Invs. Ltd. v. FirstMiss Fertilizer, Inc.*, 774

14 F. Supp. 393, 397–98 (E.D. Va. 1991)); *Am. Express Travel Related Servs. Co. v.*

15 *Sevier County Bank*, Case No. Case No. 2:10-CV-841 TS, 2011 U.S. Dist. LEXIS

16 16536 at *12 (D. Utah Feb. 17, 2011) (no personal jurisdiction in Utah over the

17 defendant Tennessee bank; rejecting argument that mailing a letter of credit to a

18 beneficiary in Utah and then mailing a cancellation letter to Utah created a basis for

19 personal jurisdiction); *First Metro Bank v. Cent. Bank*, 904 F. Supp. 2d 1215, 1224

20 (N.D. Ala. 2012) ("multiple written and telephonic communications" sent to the

21 forum state by out-of-state issuer of letter of credit did not create basis for personal

22 jurisdiction).  *See also Peterson v. Kennedy*, 771 F.2d 1244 (9th Cir. 1985) (use of

23 the mails, telephone or other communications "normally legally insufficient" to

24 meet limited jurisdiction test).

25    For all of these reasons, Plaintiff has failed to show a basis for personal

26 jurisdiction over JPMC in connection with this dispute, and the Court should grant

27

28 party, standing alone, is an insufficient basis for jurisdiction"); *Bristol-Myers Squibb Co. v. Superior Court*, __ U.S. __, 137 S. Ct. 1773, 1783 (2017) (same).

1    JPMC's Motion and dismiss this action pursuant to FRCP, Rule 12(b)(2).

2    **IV.    IN THE ALTERNATIVE, THIS ACTION SHOULD BE DISMISSED FOR**

3    **FAILURE TO STATE A CLAIM**

4    Plaintiff's obligation to provide the grounds of his entitlement to relief

5    requires more than labels and conclusions in order to survive a Rule 12(b)(6)

6    motion, and a formulaic recitation of a cause of action's elements will not do.  *Bell*

7    *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Factual allegations must be

8    enough to raise a right to relief above the speculative level on the assumption that

9    all of the complaint's allegations are true."  *Id.*

10   On a motion to dismiss, courts "are not bound to accept as true a legal

11   conclusion couched as a factual allegation."  *Bell Atlantic Corp. v. Twombly*, 550

12   U.S. at 555.  *See also Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) ("It is the

13   conclusory nature of respondent's allegations, rather than their extravagantly

14   fanciful nature, that disentitles them to the presumption of truth."); *Chaparro v.*

15   *Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) ("[I]f allegations are indeed

16   more conclusory than factual, then the court does not have to assume their truth.").

17   Applying the above principles to the instant case, Plaintiff's claims do not

18   state a claim for relief and should be dismissed.

19   **A.    New York Substantive Law Applies To Plaintiff's Claims**

20   Under California's choice-of-law analysis, New York substantive law applies

21   to Plaintiff's claims against JPMC, as the Confirmation contains a New York choice

22   of law clause.

23   Federal courts sitting in diversity look to the law of the forum state when

24   making choice of law determinations. *Hoffman v. Citibank (S. Dakota), N.A.*, 546

25   F.3d 1078, 1082 (9th Cir. 2008), *accord. Fields v. Legacy Health Sys.*, 413 F.3d

26   943, 950 (9th Cir. 2005).  Here, Plaintiff sued JPMC in California state court and

27   the case was removed to this Court.  Therefore, California law applies to the choice-

28   of-law analysis.

Under California's and New York's identical versions of U.C.C. § 5-116(a) ("Choice of Law and Forum"), "[t]he jurisdiction whose law is chosen [to govern the letter of credit] need not bear any relation to the transaction." Cal. Com. Code § 5116(a); N.Y. U.C.C. § 5-116(a).  *See, e.g., Banco Nacional De Mexico, S.A. v. Societe Generale*, 34 A.D.3d 124, 130, 820 N.Y.S.2d 588 (1st Dept. 2006) (honoring the New York choice of law clause in the letter of credit "regardless of any relationship or lack thereof with New York State.").  Here, the Confirmation is unambiguous: "Our [JPMC's] obligations, if any, under this Letter of Credit shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to principles of conflict of laws." Complaint, Exh. 1, p. 12. Accordingly, New York substantive law applies.

Notably, the result would be the same under California common law. Generally, California applies the "governmental interest" analysis to choice-of-law questions. *CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1141 (9th Cir. 2010), *citing Kearney v. Salomon Smith Barney, Inc*., 39 Cal. 4th 95, 45 Cal. Rptr. 3d 730, 137 P.3d 914, 922 (Cal. 2006).  However, "if the parties state their intention in an express choice-of-law clause, California courts ordinarily will enforce the parties' stated intention." *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182 (9th Cir. 2009), *citing Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436, 63 Cal. Rptr. 3d 816, 827 n. 7 (2007).  Once a court determines the parties' intention, it will analyze whether: "(1) the chosen jurisdiction has a substantial relationship to the parties or their transaction; or (2) any other reasonable basis for the choice of law provision exists." *Id., citing Hughes Elecs. Corp. v. Citibank Del.,* 120 Cal. App. 4th 251, 15 Cal. Rptr. 3d 244, 248 (2004).  If either one of these tests is met, then a California court will enforce the relevant choice-of-law provision unless the chosen jurisdiction's law is contrary to California public policy. *Id*.

Here, in addition to the Confirmation reflecting the clear and unambiguous intention for New York law to apply, New York also has a substantial relationship

to the transaction and ample reasonable bases exist for choosing New York law. Namely, JPMC's New York office is the confirming bank under the LC, thereby establishing a substantial relationship to the chosen jurisdiction.  In addition, New York is widely recognized as having an established, well-developed, and stable body of banking law that is equipped to deal with disputes arising out of international letter of credit transactions.  *See, e.g., Banco Nacional De Mexico, S.A.*, 34 A.D.3d at 130 (referring to New York as "a primary financial center and a clearinghouse of international transactions [with] a strong interest in maintaining its preeminent financial position and in protecting the justifiable expectation of the parties who choose New York law as the governing law of a letter of credit").

Because the Confirmation explicitly states that the obligations, if any, of JPMC under the LC shall be governed by New York law; because the LC was confirmed by JPMC out of New York; and because the choice of law in the Confirmation need not bear any relationship to the transaction in any event, under California's choice of law analysis, New York law applies to Plaintiff's claims.[4]

### B.    Plaintiff's Breach Of Contract Claim Is For Wrongful Dishonor

While Plaintiff styles its claim as "breach of contract," it is actually for wrongful dishonor under N.Y. U.C.C. Sections 5-111(a) and (c).  Section 5-111(a) provides that "(a) If an issuer wrongfully dishonors . . . its obligation to pay money under a letter of credit before presentation, the beneficiary, successor, or nominated person presenting on its own behalf may recover from the issuer the amount that is the subject of the dishonor . . . ."  N.Y. U.C.C. § 5-111(a).  Subsection (c) further specifies that "to the extent of the confirmation, a confirmer has the liability of an issuer specified in this subsection and subsections (a) and (b) of this section."  N.Y. U.C.C. § 5-111(c).  *See also* N.Y. U.C.C. § 5-107(a) ("a confirmer is directly obligated on a letter of credit and has the rights and obligations of an issuer to the

---

[4] The Complaint itself suggests that New York law applies by citing New York authority for various propositions. *See, e.g.*, Complaint ¶¶ 35-36.

1   extent of its confirmation.").

2   Here, the Complaint describes its claims as ones for wrongful dishonor of the

3   LC by JPMC, as the confirming bank.  The Complaint alleges that, on or about

4   March 13, 2017, "the LC was presented for payment by [Plaintiff] and dishonored

5   by Defendant by refusing to pay."  Complaint, ¶ 28.  *See also id.*, ¶¶ 42-43 ("The

6   date for payment by Defendant on the LC was initially December 12, 2016.  That

7   date was extended by the parties to March 13, 2017 by amendment.  Defendant has

8   thus far refused to make payment on the LC, and is therefore in breach of its

9   obligations under the LC.").  Although captioned as claims for "breach of contract"

10  and related "declaratory relief," Plaintiff is plainly alleging that JPMC violated the

11  Confirmation – and not any other contract or undertaking – by virtue of dishonoring

12  a draw under the LC.  *See Bath Iron Works Corp. v. WestLB*, No. 02 Civ. 2272

13  RCC, 2004 U.S. Dist. LEXIS 19206, at \*2 (S.D.N.Y. Sept. 27, 2004) ("Although

14  some courts use 'breach of contract' and 'wrongful dishonor' interchangeably there

15  are a number of significant substantive differences between them.… In order to

16  clarify any confusion, only the wrongful dishonor claim survives because it is the

17  appropriate action for a letter of credit dispute under New York law.").[5]

18  Accordingly, Plaintiff's claims are for wrongful dishonor under U.C.C. § 5-111(a)

19  and (c).

20      **C.    Plaintiff's Claims Are Barred By The Applicable Statute Of Limitations**

21      New York's statute of limitations applies to Plaintiff's claims.  *See Hatfield*,

22  564 F.3d at 1183 ("under California law, a contract's choice of law provision will

23  identify what state's substantive law, ***including the statute of limitations***, will be

24  applied.") (emphasis added).

25  _____

26  [5] Similarly, under California law, "the relationship between issuer and beneficiary
    of a letter of credit is not truly contractual; it is more accurately described as a

27  statutory relationship giving rise to a statutory obligation on the part of the issuer to
    make payment upon a proper presentation of documents by the beneficiary."  *San*

28  *Diego Gas & Electric Co. v. Bank Leumi*, 42 Cal. App. 4th 928, 935 (1996).

Under New York law, the statute of limitations applicable to claims for wrongful dishonor of a letter of credit is one year. *See* N.Y. U.C.C. § 5-115 ("An action to enforce a right or obligation arising under this article [5] must be commenced within one year after the expiration date of the relevant letter of credit or one year after the cause of action accrues, whichever occurs later. A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach."). Notably, California's corresponding statute of limitations is identical. *See* Cal. Com. Code § 5115.

According to the U.C.C. Official Comment, this one-year statute of limitations "applies to all claims for which there are remedies under Section 5-111 [*i.e.* wrongful dishonor] and to other claims made under this article, such as claims for breach of warranty under Section 5-110." Official Comment, U.C.C. § 5-115. In addition, "because it covers all claims under Section 5-111, the statute of limitations applies not only to wrongful dishonor claims against the issuer but also to claims between the issuer and the applicant arising from the reimbursement agreement." *Id.* Accordingly, the one-year statute of limitations under N.Y. U.C.C. § 5-115 applies to Plaintiff's claim for wrongful dishonor.

In addition, under New York law, the one-year statute of limitations applicable to wrongful dishonor also attaches to the claim for a declaratory judgment. *See Press v. Monroe Cty.*, 50 N.Y.2d 695, 701, 409 N.E.2d 870, 872 (N.Y. 1980) ("In order to determine the Statute of Limitations applicable to a particular declaratory judgment action, the court must examine the substance of that action to identify the relationship out of which the claim arises and the relief sought. If the court determines that the underlying dispute can be or could have been resolved through a form of action or proceeding for which a specific limitation period is statutorily provided, that limitation period governs the declaratory

judgment action.").[6]

Here, the Complaint alleges that in March of 2017, the LC matured and JPMC "wrongfully dishonored" its obligations as confirming bank on the LC by refusing to pay on the draw at maturity (notwithstanding that it was enjoined from doing so based on fraud in the underlying transaction). As a result, any claim for wrongful dishonor and/or declaratory relief expired in March 2018. Because this action was commenced in September 2020, Plaintiff's claims are barred by the applicable one-year statute of limitations.

### D.   Plaintiff Lacks Standing To Sue

The Complaint should be dismissed for a separate and independent reason: Plaintiff does not have standing to commence an action against JPMC for wrongful dishonor, as Plaintiff is not one of the specifically-delineated parties entitled under N.Y. U.C.C. § 5-111(a) to bring an action for wrongful dishonor.

Under N.Y. U.C.C. § 5-111(a), "if an issuer wrongfully dishonors . . . its obligation to pay money under a letter of credit before presentation, ***the beneficiary, successor or nominated person***[7] may recover from the issuer the amount that is the

---

[6] California law is also identical to New York law regarding the applicable statute of limitations on a legal claim and on a related declaratory relief claim, providing that the limitations period on the legal claim applies to the related claim for declaratory relief. *See Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 688 (9th Cir. 1993) ("where legal and equitable claims coexist, equitable remedies will be withheld if an applicable statute of limitations bars the concurrent legal remedy.").

[7] The rationale for limiting the right to sue for wrongful dishonor to the beneficiary, successor or nominated person, is rooted in the documentary nature of letters of credit, which promotes speed and certainty among the parties. Letters of credit are unique in a world that favors free assignability of rights (such as under UCC Article 9). Given the independence principle and strictly documentary nature of letters of credit, banks must know to whom they have undertaken obligations. Obligations to unknown third parties, even purported assignees, would expose banks to tremendous risk and destroy the speed and certainty that are hallmarks of letters of credit. *See, e.g.* Official Comment to U.C.C. 5-111 ("because the letter of credit

17

1  subject of the dishonor . . . ." (Emphasis added.)  Further, pursuant to N.Y. U.C.C. §

2  5-111(c), "a confirmer has the liability of an issuer specified in this subsection and

3  subsections (a) and (b) of this section."

4        Here, Plaintiff is not one of the three specifically-delineated parties that may

5  sue for wrongful dishonor, but rather a mere claimed assignee of the beneficiary's

6  rights (if any) to the proceeds of the LC.  Unlike under traditional contracts, the

7  purported assignment of the beneficiary's rights under a letter of credit does not

8  confer standing upon an assignee to sue for wrongful dishonor of the letter of credit.

9  *See* J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial*

10  *Code* § 26:7 (6th ed. 2019) ("it was one of the prime purposes of the drafters of

11  [U.C.C.] Article Five to set an independent theoretical framework for this device, a

12  framework independent of contract, of guaranty, of third party beneficiary law, of

13  the law of assignment, and of negotiable instruments.").

14        **1.**     **Plaintiff Is Not The "Beneficiary" Or "Transferee" Of The LC**

15        The term "beneficiary," as used in U.C.C. Revised Article 5, is defined as "a

16  person who under the terms of a letter of credit is entitled to have its complying

17  presentation honored.  The term includes a person to whom drawing rights have

18  been transferred under a transferable letter of credit."  N.Y. U.C.C. § 5-102(a)(3).

19  Here, the Complaint alleges that "once the Discount Agreement was consummated,

20  Plaintiff stepped into FirmGreen's shoes as beneficiary to the LC."  Complaint, ¶ 8.

21  As a matter of New York law, however, Plaintiff could not have "stepped into

22  FirmGreen's shoes" as beneficiary by virtue of the Discount Agreement, which is

23  an agreement between Plaintiff and FirmGreen only that cannot affect the terms of

24  JPMC's irrevocable Confirmation.

25        Specifically, under the Uniform Customs and Practice for Documentary

26  Credits, 2007 revision, International Chamber of Commerce Publication No. 600

27

28  depends upon speed and certainty of payment, it is important that the issuer not be
given an incentive to dishonor").

NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM POINTS AND AUTHORITIES

("UCP 600") and New York law, both of which apply to the Confirmation (*see* Complaint, Exh. 1, pp. 12, 18), a letter of credit may not be transferred to another beneficiary unless it explicitly provides that it is transferrable.  *See* UCP 600, Art. 38(b) ("Transferable credit means a credit that specifically states it is 'transferable.' A transferable credit may be made available in whole or in part to another beneficiary ('second beneficiary') at the request of the beneficiary ('first beneficiary')");  N.Y. U.C.C. § 5-112 ("unless a letter of credit provides that it is transferable, the right of a beneficiary to draw or otherwise demand performance under a letter of credit may not be transferred."); *see also Algemene Bank Nederland, N.V. v. Soysen Tarim Urunleri Dis Ticaret Ve Sanayi, A.S.*, 748 F. Supp. 177, 181–82 (S.D.N.Y. 1990) ("transfer may be made to a new substituted beneficiary only if the letter of credit is expressly designated as 'transferable' by the issuing bank."); J. Dolan, *The Law of Letters of Credit* at § 10.01 (2020) ("the UCC, [UCP], [and ISP 98], make it clear that a beneficiary may not transfer the right to draw unless the credit recites that it is transferable.").

Here, the Complaint does not allege that the LC (or the Confirmation) is transferable, and the documents attached to the Complaint likewise do not show any designation of the LC (or the Confirmation) as transferable.  *See* Complaint, Exh. 1. Accordingly, as a matter of New York law, the LC could not have been transferred by FirmGreen to Plaintiff (nor could the Confirmation have been so transferred). Plaintiff is not the "beneficiary" and did not "step into the shoes" of the beneficiary. Rather, at most, FirmGreen *assigned* its rights to the proceeds of the LC to Plaintiff. A beneficiary may assign its rights to the proceeds of a letter of credit "in accordance with the provisions of the applicable law."  UCP 600, Art. 39; *see also Nassar v. Fla. Fleet Sales Inc.*, 79 F. Supp. 2d 284, 293 (S.D.N.Y. 1999) ("The UCP itself allows beneficiaries freely to assign the proceeds of a draw."); *Algemene Bank*, 748 F. Supp. at 182 ("such assignments are commonplace."); *see generally* Dolan, *supra* at § 10.01 (2020) ("letter of credit law displays few reservations

concerning the free alienability of the right to take the credit proceeds.").

As opposed to an actual transfer, an assignment of proceeds may be made regardless of whether the credit provides on its face for "transferability." *See* UCP Art. 39 ("Assignment of Proceeds") ("the fact that a credit is not stated to be transferable shall not affect the right of the beneficiary to assign any proceeds to which it may be or may become entitled under the credit"); N.Y. U.C.C. § 5-114(b) ("Assignment of Proceeds") ("A beneficiary may assign its right to part or all of the proceeds of a letter of credit.").

Upon assignment of proceeds, as opposed to transfer, the beneficiary maintains all other rights and obligations under the credit. *See Algemene Bank*, 748 F. Supp. at 181–82 (S.D.N.Y. 1990) ("an assignment of proceeds, by contrast [to transfer], changes only the party entitled to receive payment of the proceeds"); *Die–Matic Tool Co. v. Advanced Air Support Servs., Inc.*, No. 90 Civ. 7001 (PNL), 1993 U.S. Dist. LEXIS 2854, at *7 (S.D.N.Y. Mar. 11, 1993) ("The distinction between transfer of a letter of credit and assignment of the proceeds is significant...."); *see also Inter Impex S.A.E. v. Comtrade Corp.*, No. 00 Civ. 0133, 2004 U.S. Dist. LEXIS 24431 at *9 (S.D.N.Y. Dec. 6, 2004) (citing *Die–Matic Tool Co.* for same proposition). *See generally* Dolan, *supra*, § 10.01 ("Letter of credit law distinguishes between the transfer of the right to draw under a credit and the assignment of the right to take the credit proceeds.").

The case *MSF Holding Ltd. v. Fiduciary Tr. Co. Int'l*, 435 F. Supp. 2d 285 (S.D.N.Y. 2006), *aff'd on other grounds*, 235 F. App'x 827 (2d Cir. 2007), is instructive in this regard. In *MSF Holding*, the letter of credit, by its terms, was governed by the UCP and New York substantive law and specifically permitted transfer to the plaintiff only. However, the beneficiary purported to transfer "all of its right, title and interest in and to [the LC]" to MSF-HSF, and not the plaintiff, MSF Holdings. The Court held that the purported transfer to MSF-HSF was invalid as a matter of law because MSF-HSF was not designated in the letter of credit as a

1    permissible transferee.  *Id.* at 298.  Crucially, the Court held:

2         The question whether Philips actually transferred LOC 649 to MSF–
      HSF […] is easily answered in the negative.  LOC 649, by its own
3         terms, limits its transfer *solely to MSF Holding Ltd.* and no other
      party.  Any attempted transfer to MSF–HSF, an entity distinct from
4         plaintiff, fails, and the Court need not address whether the credit's two
5         subsequent conditions on transfer were met.  *See* ICC, *supra,* art.
      48(b).[8]  While a credit's restriction on transfer is strictly construed to
6         preclude transfer to any party other than the named transferee, the
7         UCP and New York state law does not so strictly construe restrictions
      on the assignment of a credit's proceeds.
8
9    *Id.*

10        Having determined that the beneficiary did not in fact transfer the letter of

11   credit to MSF-HSF, the Court held as a matter of law that the beneficiary had

12   *assigned* its rights to MSF-HSF.  *Id.* at 303.  The effect of such assignment, the

13   Court concluded, "is clear: MSF–HSF retained, as of the date of the assignment, a

14   right—in the form of a security interest—to the proceeds of LOC 649, while Philips

15   remained obligated to draw the proceeds from defendant in MSF–HSF's favor."  *Id.*

16        Here, the LC does not permit transfers to anyone, let alone Plaintiff, and any

17   purported transfer is invalid as a matter of New York law.  *See* Complaint, Exh. 1.

18   Instead, the purported "Discount Agreement" at most assigned the proceeds of the

19   letter of credit to Plaintiff, as was the case in *MSF Holding*.  Accordingly, Plaintiff

20   was not the "beneficiary" of the LC or the Confirmation for purposes of 5-111(a).

21        **2.    Plaintiff Is Not A "Successor" Or "Nominated Person"**

22        The Complaint alternatively claims that "Plaintiff purchased FirmGreen's

23   rights to receive payment under the LC, thus becoming the successor to FirmGreen

24   as the beneficiary of the LC."  Complaint, ¶ 40.  This is contrary to New York law.

25   Under 5-102(a)(15), "successor of a beneficiary" is defined as one who "succeeds to

26   substantially all of the rights of a beneficiary **_by operation of law_**, including a

27   corporation with or into which the beneficiary has been merged or consolidated, an

28   ────────────────────

[8] This section was re-codified in UCP 600 as Art. 39(b).

administrator, executor, personal representative, trustee in bankruptcy, debtor in possession, liquidator, and receiver." (Emphasis added).   Notably, Official Comment 10 to § 5-102 specifies that this definition "excludes certain transfers, where no part of the transfer is 'by operation of law'- such as the sale of assets by one company to another."   Similarly, the New York State Bar Association Committee Report on U.C.C. Revised Article 5 specifies that "the inclusion of the words 'by operation of law' prevents certain persons, such as a purchaser of assets (as opposed to a successor by merger), from attaining 'successor of a beneficiary' status."   N.Y. U.C.C. § 5-102 NYSBA Committee Report.   By "purchasing FirmGreen's rights to receive payment under the LC," plaintiff did not actually become FirmGreen's "successor" as the term is defined and used for letter of credit purposes.

Lastly, Plaintiff is clearly not a "nominated person," which is limited to persons whom the issuer designates or authorizes to give value under a letter of credit and undertakes to reimburse.  *See* N.Y. U.C.C. § 5-102(11).  For example, JPMC, as confirming bank, is a nominated person under the LC, but Plaintiff is not.

Accordingly, because Plaintiff is not the beneficiary, successor, or nominated person under the LC (or the Confirmation), pursuant to N.Y. U.C.C. § 5-111(a), Plaintiff does not have standing to sue the confirming bank for wrongful dishonor. For this additional reason, the Complaint should be dismissed.[9]

### E.   Plaintiff's Claim For "Declaratory Relief" Must Be Dismissed As Duplicative

A cause of action for "Declaratory Relief," as Plaintiff seeks here, will not lie

---

[9] Plaintiff's claims also lack merit because, as the court findings in relation to the Brazilian Order and other evidence will establish should this case proceed, the dishonor of the LC was proper given that there was fraud in the underlying transaction.  N.Y. U.C.C. § 5-109.  *See, e.g.*, RJN Exhs. 8-9 (noting "serious disparities" in the documents at issue").

to determine issues raised in other causes of action before the court. *Sofi Classic S.A. de C.V. v. Hurowitz,* 444 F. Supp. 2d 231, 249–50 (S.D.N.Y. 2006) ("Plaintiffs' declaratory judgment claim seeks resolution of legal issues that will, of necessity, be resolved in the course of the litigation of the other causes of action[;] therefore, the claim is duplicative in that it seeks no relief that is not implicitly sought in the other causes of action."); *Cal. Ins. Guarantee Ass'n v. Superior Court*, 231 Cal. App. 3d 1617, 1623-24 (1991) ("The object of the [declaratory relief] statute is to afford a new form of relief where needed and not to furnish a litigant with a second cause of action for the determination of identical issues.").

Here, the Complaint claims that "a judicial declaration is necessary to determine the parties' right and obligations in light of this dispute [as] Plaintiff contends that it has the right to payment under the LC, and Defendant contends the opposite." Complaint ¶ 50.  However, "the litigation on the main claim[] will necessarily offer that relief[,] thus, there appears to be no purpose to the request for declaratory relief." *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 301, 312 (S.D.N.Y. 2010).  Indeed, determination on Plaintiff's underlying claim for wrongful dishonor will accomplish precisely that which Plaintiff seeks by way of a "judicial declaration," *i.e.*, it will determine whether Plaintiff is entitled to payment by Defendant under the LC.  Complaint ¶ 50.[10]  Accordingly, the claim for "Declaratory Relief" is duplicative and should be dismissed.

### F.    Leave To Amend Should Be Denied

JPMC also respectfully submits that Plaintiff's Complaint should be

---

[10] To the extent Plaintiff more generally seeks a determination of JPMC's obligation(s) to Plaintiff under the LC, as opposed to the Confirmation, such is also impermissible because Plaintiff has not pleaded facts to show that JPMC or Plaintiff were parties to the LC. *See Oppenheimer v. General Cable Corp.*, 143 Cal. App. 2d 293, 297 (1956) (affirming order sustaining demurrer without leave to amend as to declaratory relief claim against defendants, where plaintiff sought declaration of rights under a contract to which defendants were not party).

dismissed with prejudice.  Leave to amend a complaint which has been dismissed may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co*., 806 F.2d 1393, 1401 (9th Cir. 1986); *see Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  Here, Plaintiff cannot cure the Complaint's fundamental deficiencies (*i.e*., expiration of the statute of limitations or lack of standing) by, for example, adding additional facts or theories to the Complaint. The Court should dismiss Plaintiff's Complaint with prejudice.

## V.   CONCLUSION

For the foregoing reasons, no personal jurisdiction exists or, in the alternative, no claim is stated.  JPMC respectfully requests that this Court grant the Motion and dismiss this action with prejudice.

Dated:  November 23, 2020          Respectfully submitted,

MOSES & SINGER LLP

By: */s/ Mark N. Parry*
  MICHAEL EVAN AVIDON
  MARK N. PARRY
  DAVID RABINOWITZ
  ROBERT MCFARLANE

**and**

PARKER, IBRAHIM & BERG LLP

By: */s/ Heather E. Stern*
  JOHN M. SORICH
  HEATHER STERN
  MATTHEW HENDERSON

Attorneys for defendant JPMorgan Chase Bank, N.A.