JASON H. TOKORO (State Bar No. 252345)
KIVA G. SCHRAGER (State Bar No. 314208)
BRYAN R. REDFERN (State Bar No. 319648)
MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Telephone:   (310) 552-4400
Facsimile:    (310) 552-8400

Attorneys for Plaintiff
ZIONS BANCORPORATION, N.A. dba
CALIFORNIA BANK & TRUST

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZIONS BANCORPORATION, N.A. dba CALIFORNIA BANK & TRUST, a National Association,<br><br>Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A., a Delaware CORPORATION,<br><br>Defendant. | **CASE NO. 3:20-CV-02048-AJB-JLB**<br><br>**PLAINTIFF CALIFORNIA BANK & TRUST'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, FOR FAILURE TO STATE A CLAIM FOR RELIEF**<br><br>[Filed Concurrently with Request for Judicial Notice; Declaration of Jason H. Tokoro; Declaration of Jeffrey Hill]<br><br>Date:       February 25, 2021<br>Time:       2:00 p.m.<br>Crtrm.:    4A<br><br>The Hon. Anthony J. Battaglia |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400     FAX: (310) 552-8400

## **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................. 1

II.    BACKGROUND ................................................................... 2

    A.    JPM Confirms The Letter Of Credit ..................................... 2

    B.    CB&T Finances The L/C Based On JPM's Confirmation ................... 3

    C.    Gas Verde's Alleged Discrepancies And Requests For Extensions ......... 5

    D.    JPM Refuses To Pay CB&T ............................................. 7

    E.    CB&T Renews Its Demand, And JPM Makes A Partial Payment ........... 8

III.    LEGAL STANDARD ............................................................ 9

IV.    THE COURT HAS PERSONAL JURISDICTION OVER JPM ................... 10

    A.    JPM Purposefully Availed Itself Of The Privileges Of Doing Business In California ............................................... 11

    B.    CB&T's Claims Arise Out Of JPM's Forum-Related Activities ......... 13

    C.    The Exercise Of Jurisdiction Over JPM Is Reasonable ................. 14

V.    JPM'S NEW YORK UCC ARGUMENTS FAIL ............................... 17

    A.    The L/C Is Governed By UCP 600 ..................................... 17

    B.    CB&T Has Stated A Claim For Breach Of Contract ..................... 18

    C.    CB&T's Breach Of Contract Claim Is Timely ......................... 20

    D.    CB&T Has Standing ................................................... 21

    E.    JPM's Arguments Are Barred By Equitable Estoppel ................. 22

VI.    CB&T IS ENTITLED TO DECLARATORY RELIEF ......................... 23

VII.    CB&T SHOULD BE GRANTED LEAVE TO AMEND ....................... 25

VIII.    CONCLUSION ................................................................ 25

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1

## TABLE OF AUTHORITIES

2

**Page**

3

## FEDERAL CASES

*ACE Am. Ins. Co. v. Bank of the Ozarks*,
   No. 11 Civ. 3146(PGG), 2014 WL 4953566 (S.D.N.Y. Sept. 30, 2014) .19, 25

*ACR Sys., Inc. v. Woori Bank*,
   232 F. Supp. 3d 471 (S.D.N.Y. 2017)................................................17, 19, 20

*All Serv. Exportacao, Importacao Comercio, S.A. v. Banco Bamerindus Do Brazil, S.A., N.Y. Branch*,
   921 F.2d 32 (2d Cir. 1990) ........................................................................1, 15

*Amusement Indus., Inc. v. Stern*,
   693 F. Supp. 2d 301 (S.D.N.Y. 2010)................................................................23

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .........................................................................................9

*Ballard v. Savage*,
   65 F.3d 1495 (9th Cir. 1995)...................................................................13, 14

*Bartel v. Tokyo Elec. Power Co., Inc.*,
   371 F. Supp. 3d 769 (S.D. Cal. 2019) ............................................................13

*Bath Iron Works Corp. v. Westlb*,
   No. 02 Civ. 2272(RCC), 2004 WL 784856 (S.D.N.Y. Apr. 12, 2004) ..........19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................9, 10

*Boschetto v. Hansing*,
   539 F.3d 1011 (9th Cir. 2008) .......................................................................13

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ...............................................................11, 12, 14, 16

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) .......................................................................................10

*Dole Food Co., Inc. v. Watts*,
   303 F.3d 1104 (9th Cir. 2002).........................................................................15

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*,
   411 F.3d 384 (2d Cir. 2005)............................................................................24

*Exp.-Imp. Bank of the U.S. v. United Cal. Disc. Corp.*,
   738 F. Supp. 2d 1047 (C.D. Cal. 2010)...........................................................19

*Figi Graphics, Inc. v. Dollar Gen. Corp.*,
   33 F. Supp. 2d 1263 (S.D. Cal. 1998) ...........................................................13

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

*Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*,
   972 F.3d 1101 (9th Cir. 2020)..........................................................11, 12, 13

*Hamilton Bank, N.A. v. Kookmin Bank*,
   44 F. Supp. 2d 653 (S.D.N.Y. 1999) ................................................. 16

*Healy v. Wells Fargo Bank, N.A.*,
   No. 20-cv-01838-H-AHG, 2020 WL 7074939 (S.D. Cal. Dec. 3, 2020) ....... 13

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945) .......................................................................... 10

*Kools v. Citibank, N.A.*,
   872 F. Supp. 67 (S.D.N.Y. 1995) ...............................................2, 17, 18

*Milliken v. Meyer*,
   311 U.S. 457 (1940) .......................................................................... 10

*MSF Holding Ltd. v. Fiduciary Tr. Co. Int'l*,
   435 F. Supp. 2d 285 (S.D.N.Y. 2006) ..........................................19, 22

*Optopics Labs. Corp v. Savannah Bank of Nigeria, Ltd.*,
   816 F. Supp. 898 (S.D.N.Y. 1993) ................................................... 21

*Royal Park Invs. SA/NV v. HSBC Bank USA, Nat'l Ass'n*,
   109 F. Supp. 3d 587 (S.D.N.Y. 2015) ............................................... 25

*Scheuer v. Rhodes*,
   416 U.S. 232 (1974) .......................................................................... 10

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ......................................................10, 11

*Semetex Corp. v. UBAF Arab Am. Bank*,
   853 F. Supp. 759 (S.D.N.Y. 1994) ................................................16, 24

*State Farm Mut. Auto. Ins. Co. v. Boermans*,
   No. 17cv1864 JM (BLM), 2018 WL 2684162 (S.D. Cal. June 5, 2018) ........11

*Terracom v. Valley Nat'l Bank*,
   49 F.3d 555 (9th Cir. 1995) .............................................................. 15

*Thomas P. Gonzalez Corp., v. Consejo Nacional De Produccion De Costa Rica*,
   614 F.2d 1247 (9th Cir. 1980) .......................................................... 13

## **STATE CASES**

*Fertico Belgium, S.A. v. Phosphate Chems. Exp. Ass'n*,
   100 A.D.2d 165 (N.Y. App. Div. 1984)............................................. 19

*First Commercial Bank v. Gotham Originals*,
   64 N.Y.2d 287 (1985)....................................................................... 15

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

*Matter of Shondel J. v. Mark D.*,
  7 N.Y.3d 320 (2006) ...................................................................................22, 23

*Meyer v. N. Shore-Long Island Jewish Health Sys., Inc.*,
  137 A.D.3d 878 (N.Y. App. 2016) .....................................................................18

*Ross Bicycles, Inc. v. Citibank, N.A.*,
  613 N.Y.S.2d 538 (N.Y. Sup. Ct. 1994) ...........................................................21

*Velocity Invs., LLC v. McCaffrey*,
  921 N.Y.S.2d 799 (Nassau Dist. Ct. 2011) .......................................................20

**FEDERAL STATUTES**

28 U.S.C. § 2201(a) ....................................................................................................23

**STATE STATUTES**

Cal. Civ. Proc. Code § 410.10 ....................................................................................10

N.Y. U.C.C. Law § 1-103 ...........................................................................................22

N.Y. U.C.C. Law § 1-103(b) .......................................................................................22

N.Y. U.C.C. Law § 5-111 ..............................................................................2, 17, 18, 21

N.Y. U.C.C. Law § 5-111(a) ........................................................................................18

N.Y. U.C.C. Law § 5-115 ............................................................................................20

N.Y. U.C.C. Law § 5-116(c) ..................................................................................17, 21

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6) ................................................................................................9

Fed. R. Civ. P. 15(a)(2) ...............................................................................................25

**OTHER AUTHORITIES**

Uniform Customs and Practice for Documentary Credits, International
  Chamber of Commerce Publication No. 600 ....................................2, 3, 17, 18

Uniform Customs and Practice for Documentary Credits, International
  Chamber of Commerce Publication No. 600, Art. 15(b) ...............................19

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1

Uniform Customs and Practice for Documentary Credits, International
    Chamber of Commerce Publication No. 600, Art. 8..........................................7

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

# I.    <u>INTRODUCTION</u>

Defendant JPMorgan Chase Bank, N.A.'s ("Defendant" or "JPM") Motion to Dismiss is merely an attempt to further delay its obligation to pay Plaintiff California Bank & Trust ("Plaintiff" or "CB&T") what it is owed.

This case is simple.  JPM is the confirming bank on a letter of credit ("L/C"), the proceeds of which have been legally assigned to CB&T.  CB&T obtained the required drawing documents from the L/C beneficiary, forwarded them to JPM for review and acceptance, and JPM accepted the documents and expressly undertook to pay CB&T when the L/C matured.  But JPM breached that obligation, and no payment was made as required on the date of maturity.

When CB&T demanded payment, JPM refused.  JPM did so, not because it was not obligated to make payment on the L/C or because of any impropriety with the confirmation, its acceptance of the drawing documents, or its express promise to pay to CB&T.   Instead, JPM notified CB&T that JPM was enjoined from making payment by a Brazilian court order (the "Injunction").  CB&T is not a party to the Brazilian suit, and the law is clear that it does not—and cannot—excuse JPM's independent obligation to pay CB&T as the confirming bank. *See, e.g., All Serv. Exportacao, Importacao Comercio, S.A. v. Banco Bamerindus Do Brazil, S.A., N.Y. Branch*, 921 F.2d 32, 35 (2d Cir. 1990) (*Exportacao*) ("The issuing bank's obligation to honor drafts drawn by the beneficiary on a letter of credit is distinct from any duty owed by the buyer, its customer, under the sale of goods contract.").

JPM knows that the Injunction provides no basis to withhold payment.  So it is trying to find another way to avoid its obligations.  All of its arguments fail.

*First*, JPM argues that it is not subject to personal jurisdiction in this Court because it has not purposefully availed itself of this forum and CB&T's claims do not arise from JPM's activities in California.  This is pure obfuscation.  As JPM is well-aware, at the time this dispute arose, it operated a Global Trade division out of its Los Angeles office, which handled the entire L/C transaction between CB&T and

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   JPM.  It was JPM's Los Angeles office that undertook to pay CB&T, and it was
2   JPM's Los Angeles office that first refused to pay CB&T because of the Injunction.
3   JPM knows this.  It is not being candid with the Court.

4        *Second*, knowing that it has breached its contractual obligations, JPM tries to
5   avoid liability by arguing that CB&T's breach of contract claim "is actually for
6   wrongful dishonor under N.Y. U.C.C. Sections 5-111(a) and (c)."  (Mot. at 14.)
7   This argument fails on its face.  The L/C expressly incorporates UCP 600 and under
8   New York law, the UCP controls over Article 5 of the UCC.  *See Kools v. Citibank,*
9   *N.A.*, 872 F. Supp. 67, 71 (S.D.N.Y. 1995) (holding that when the UCP is
10  incorporated into a letter of credit, its provisions "displace Article 5 of the Uniform
11  Commercial Code").  CB&T's claim does not arise under UCC section 5-111.

12       As a result, JPM's related arguments that CB&T lacks standing and its claims
13  are time-barred—*which depend entirely on converting CB&T's breach of contract*
14  *claim to wrongful dishonor under UCC section 5-111*—similarly fail.  Moreover,
15  JPM actively induced CB&T's reliance by repeatedly assuring it that full payment
16  would be made when the Injunction was lifted, and consistently acknowledging its
17  obligation to CB&T—*including through a partial payment just four months ago*.
18  Thus, even if the UCC applied to CB&T's cause of action (it does not), JPM would
19  still be equitably estopped from asserting the statute of limitations as a defense or
20  challenging CB&T's standing to enforce its right to payment under the L/C.

21       JPM's Motion should be denied in its entirety.

22  **II.**    **BACKGROUND**

23      **A.**    **JPM Confirms The Letter Of Credit**

24       In 2016, FirmGreen Energy International Holdings, Inc. ("FirmGreen"), a
25  renewable energy company located in Newport Beach, California, entered into an
26  agreement to sell a biogas conditioning unit to Gas Verde, S.A. ("Gas Verde"), a
27  Brazilian biogas company located in Brazil.  (Compl. ¶¶ 2-3.)  To finance this
28  transaction, Gas Verde secured an export letter of credit from Banco Bradesco S.A.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400      FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  ("Bradesco"), a Brazilian bank.  (*Id.* ¶ 3.)  Bradesco issued the L/C on April 1, 2016

2  for $4,867,516.75, with FirmGreen as the beneficiary.  (*Id.* Ex. 1.)

3       To ensure that FirmGreen would receive full payment, JPM agreed to serve as

4  the advising and confirming bank on the L/C.  (*Id.*)  JPM is a national bank with

5  corporate offices across the United States, including an office in Los Angeles,

6  California.  (Request for Judicial Notice ("RJN") Ex. A.)  At the time it confirmed

7  the L/C, JPM operated a Global Trade division out of its Los Angeles office.

8  (Declaration of Jeffrey Hill ("Hill Decl.") ¶ 13, Exs. 3-4, 6-7.)

9       The L/C includes a New York choice of law provision, and expressly

10 incorporates the latest version of the UCP (Uniform Customs & Practices for

11 Documentary Credits, 2007 revision, International Chamber of Commerce

12 Publication No. 600 ("UCP 600")) as the applicable rules governing the L/C

13 transaction.  (Compl. Ex. 1.)  The L/C has no forum selection clause.  (*Id.*)

14      JPM's confirmation was made as to all parties that properly presented the

15 requisite drawing documents (the "Drawing Documents") on or before the

16 October 21, 2016 date of expiry.  (*Id.*[1])  If JPM determined that the Drawing

17 Documents complied with the terms of the L/C, it was obligated pay the full amount

18 of $4,867,516.75 when the L/C matured on December 12, 2016.  (*Id.*)

19      **B.   CB&T Finances The L/C Based On JPM's Confirmation**

20      CB&T is a division of Zions Bancorporation, N.A., offering full-service

21 banking and headquartered in San Diego, California, with offices throughout

22 California, including in Irvine, Oakland, and Los Angeles.  (Hill Decl. ¶ 2.)  Zions

23 Bancorporation, N.A. is a national bank headquartered in Salt Lake City, Utah.  (*Id.*)

24 In September 2016, FirmGreen sought financing from CB&T for its transaction with

25 Gas Verde through a discounted payment under the L/C.  (*Id.* ¶¶ 3-4.)  CB&T was

26 ────────────

27 [1] The original date of expiry was October 6, 2016.  (*See* Compl. Ex. 1.)  On
September 27, 2016, FirmGreen received an L/C amendment advice from JPM

28 extending the date of expiry to October 21, 2016.  (*See* Hill Decl. ¶ 5, Ex. 1.)

1   not willing to discount the L/C based on Bradesco's payment obligation as the

2   issuing bank.  But CB&T advised FirmGreen that it would evaluate the financing

3   request on receipt of JPM's authenticated SWIFT confirmation.[2]  (*Id.* ¶ 4.)

4          On October 17, 2016, FirmGreen provided CB&T with the L/C and Drawing

5   Documents, which CB&T then presented to JPM.  (*Id.* ¶ 6, Ex. 2.)  The next day,

6   CB&T received a SWIFT message from JPM indicating that, as the confirming

7   bank, it was holding the original L/C.  (*Id.* ¶ 7, Ex. 3.)  The SWIFT was signed,

8   "REGARDS, JPM-L.A.," indicating that the message was from JPM's Los Angeles

9   office.  (*Id.* Ex. 3.)  CB&T received a second SWIFT message from JPM on

10  October 20, 2016, confirming the L/C in the amount of $4,867,516.75, to be paid on

11  the maturity date of December 12, 2016.  (*Id.* ¶ 8, Ex. 4.)  The SWIFT message

12  stated: "WE HAVE RECEIVED DOCUMENTS, FOUND THEM IN ORDER,

13  AND FORWARDED SAME TO THE ISSUING BANK.  AS PER L/C TERMS,

14  PAYMENT WILL BE MADE TO YOUR BANK AS PER YOUR COVER

15  LETTER DTD OCT 17, 2016 ON THE MATURITY DATE INDICATED

16  ABOVE."  (*Id.*)  This SWIFT was likewise signed by "JPM-L.A."  (*Id.*)

17         In reliance on JPM's confirmation, CB&T entered into a Letter of Credit

18  Discount Agreement with FirmGreen on October 20, 2016 ("Discount Agreement").

19  (*Id.* ¶ 8; Compl. Ex. 2.)  Under the Discount Agreement, CB&T was to pay

20  FirmGreen the discounted value of the L/C in exchange for the right to payment

21  under the L/C.  (Compl. Ex. 2.)  After CB&T made the discounted payment to

22  FirmGreen on October 24, 2016, it sent a SWIFT message informing JPM that it had

23  financed the transaction.  (Hill Decl. ¶¶ 10-11, Exs. 5-6.)  The message stated:

24  "PLEASE NOTE THAT WE HAVE FINANCED THE ABOVE MENTIONED

25  LETTER OF CREDIT AND BECOME THE SOLE OWNER/BENEFICIARY OF

26  ────────────

27  [2] SWIFT is the world's largest electronic payment messaging system, which
    provides a standardized language that institutions use to authenticate

28  communications with each other.  (RJN Ex. B.)

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  YOUR UNDERTAKING. THEREFORE, WE EXPECT TO RECEIVE PAYMENT

2  FROM YOU PROMPTLY ON DECEMBER 12, 2016." (*Id.* Ex. 6)

3       CB&T received a SWIFT from JPM the same day, stating "FURTHER TO

4  OUR MESSAGE DTD OCT 20, 2016, PLEASE BE ADVISED THAT AS THE

5  CONFIRMING BANK, WE UNDERTAKE TO PAY ZB, N.A. DBA AS

6  CALIFORNIA BANK AND TRUST [$]4,867,516.75 LESS OUR INTERBANK

7  PROCESSING FEE OF [$]25.00." It was again signed by "JPM-L.A." (*Id.* Ex. 7.)

8      **C.**   **Gas Verde's Alleged Discrepancies And Requests For Extensions**

9       On November 7, 2016, CB&T received an email from Ralph De La Torre, a

10  Transaction Processing Specialist in JPM's Los Angeles office, attaching a SWIFT

11  message from Bradesco. (Hill Decl. ¶ 14, Ex. 8.) Bradesco's message stated that

12  Gas Verde and FirmGreen had agreed to reduce the amount of the L/C to

13  $2,433,760, and requested confirmation of the agreement from FirmGreen. (*Id.*)

14  Jean Rafols, VP and Operations Manager of International Banking in CB&T's Los

15  Angeles office, responded the next day that FirmGreen had "contacted [Gas Verde]

16  and confirmed that the drawing of $4,867,516.75 [wa]s correct." (*Id.* ¶ 15, Ex. 8.)

17       On November 15, 2016, Jay Fernando, a Transaction Processing Manager in

18  JPM's Los Angeles office, forwarded Ms. Rafols another SWIFT message from

19  Bradesco, which alleged discrepancies in the Drawing Documents and indicating

20  that Gas Verde would only be paying FirmGreen $2,433,760 and that "the balance

21  of the L/C w[ould] not be utilized." (*Id.* ¶ 16, Ex. 9.) Over the next several days,

22  Ms. Rafols discussed the alleged discrepancies with Mr. Fernando, Mr. De La Torre,

23  and Agnes Martinez, VP and Operations Manager in JPM's Los Angeles office.

24  (*See id.* ¶ 17.) Rosie Jen, Senior VP and International Banking Manager in CB&T's

25  Los Angeles office, also spoke with FirmGreen, who agreed to try to resolve the

26  alleged invoice discrepancies with Gas Verde. (*Id.* ¶ 18.)

27       Following these communications, Mr. Fernando and Mr. De La Torre sent

28  Ms. Rafols two more SWIFT messages from Bradesco. (*Id.* ¶ 19, Ex. 10.)

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  Bradesco's first message, dated November 21, 2016, confirmed that it would make

2  the full payment of $4,867,516.75 on maturity.  (*Id.*)  In the second, dated

3  November 24, 2016, Bradesco stated that it had been advised by Gas Verde that

4  FirmGreen had sent JPM replacement Drawing Documents for a revised amount of

5  $2,433,760.  (*Id.*)  Both messages were sent to JPM's Los Angeles office.  (*Id.* Ex.)

6  On November 25, 2016, Ms. Rafols sent an email to Mr. Fernando, Mr. De La

7  Torre, and Ms. Martinez, stating "please note that we did not receive new set of

8  replacement documents for $2,433,760.00 and no new set will be presented

9  according to the Beneficiary.  We expect payment from you (JPMorgan Chase

10  Bank) for $4,867,516.75 at maturity date 12/12/2016."  (*Id.* ¶ 20, Ex. 10.)

11  Then, shortly before the L/C matured in December 2016, Ms. Martinez

12  informed CB&T that Gas Verde sought an extension on the maturity date.  (*Id.* ¶

13  21.)  CB&T agreed to extend the maturity date to March 13, 2017.  (*Id.* ¶ 22 Exs.

14  12-13.)  CB&T's willingness to grant an extension to Gas Verde, a Brazilian

15  company with which CB&T had no business relationship, was based entirely on the

16  fact that the L/C was confirmed by JPM, which CB&T viewed as a reliable entity

17  that provided U.S. credit risk and U.S. based collection.  (*Id.* ¶ 25, Exs. 12-14.)  But

18  CB&T made clear that this would be the sole extension granted.  (*See id.*)

19  Upon the execution of the December 12, 2016 amendment, CB&T received

20  an email from Mr. De La Torre attaching a copy of a SWIFT message from JPM

21  confirming the new maturity date of the L/C.  (*Id.* ¶ 24, Ex. 14.)  The SWIFT

22  requested that CB&T "RELAY TH[E] MESSAGE TO [ITS] L.A. OFFICE," and

23  stated "AS THE CONFIRMING BANK, WE UNDERTAKE TO PAY ZB, N.A.

24  DBA AS CALIFORNIA BANK AND TRUST [$]4, 867, 516.75 [sic] ON NEW

25  MATURITY DATE OF MARCH 12, 2017 LESS OUR INTERBANK FEE OD

26  [sic] [$]25.00."  (*Id.* Ex. 14.)  As with the previous SWIFTS received by CB&T, the

27  message was signed "REGARDS, JPM-LA."  (*See id.*)

28  On March 6, 2017, FirmGreen advised CB&T that Gas Verde sought a further

1  extension on the L/C maturity.  (*Id*. ¶ 26, Ex. 15.)  CB&T told FirmGreen that the

2  original extension was based solely on the authenticated SWIFT confirmation by

3  JPM, and CB&T would not consider a second extension.  (*Id*. Ex. 15.)

4          Two days later, on March 8, 2017, CB&T received a SWIFT message from

5  JPM relaying a request from Bradesco to extend the L/C maturity date to May 12,

6  2017.  (*Id*. ¶ 27, Ex. 16.)  Bradesco's SWIFT was directed to the attention of "JPM

7  GLOBAL TRADE – LOS ANGELES."  (*Id*.)  JPM's SWIFT message to CB&T

8  was signed "GLOBAL TRADE OPERATIONS – LOS ANGELES," and advised

9  CB&T to "PLEASE RELAY TH[E] MESSAGE TO [ITS] L.A. OFFICE."  (*Id*.)

10          CB&T immediately sent a SWIFT message to "JPM GLOBAL TRADE –

11  LOS ANGELES" denying the second extension request and directing JPM to

12  "EFFECT PAYMENT OF [$]4,867,516.75 PROMPTLY ON 3/13/2017," as it

13  undertook to do in its December 12, 2016 authenticated SWIFT.  (*Id*. ¶ 28, Ex. 17.)

14      **D.**     **JPM Refuses To Pay CB&T**

15          Despite its SWIFT messages explicitly undertaking to pay CB&T, and its

16  repeated representations that it would fulfill its confirmation obligations, JPM failed

17  to pay CB&T when the L/C matured on March 13, 2017.  (Hill Decl. ¶ 31.)

18          In response, CB&T sent a SWIFT tracer to JPM seeking payment.  (*Id*. ¶¶ 30-

19  31, Ex. 18.)  On March 14, 2017, CB&T emailed JPM and sent a second SWIFT

20  tracer for payment, which included a reminder of JPM's obligation as the

21  confirming bank to pay CB&T pursuant to UCP 600 Art. 8.  (*Id*. ¶ 32, Ex. 19.)  On

22  March 15, 2017, CB&T received a SWIFT message from JPM stating:

23  "JPMORGAN CHASE BANK N.A. HAS RECEIVED NOTICE OF A JUDICIAL

24  ORDER ISSUED IN BRAZIL ON MARCH 10, 2017 AT THE REQUEST OF

25  GAS VERDE, PROVIDING THAT JPMORGAN CHASE BANK, N.A. IS

26  CURRENTLY ENJOINED FROM MAKING ANY PAYMENT UNDER THE

27  ABOVE-REFERENCED [L/C]."  (*Id*. ¶ 33, Ex. 20.)  The SWIFT was signed

28  "JPMORGAN CHASE BANK, N.A. GLOBAL TRADE – LOS ANGELES."  (*Id*.)

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

On March 28, 2017, Jeffrey Hill, Executive VP and General Counsel for CB&T, sent a letter to Ms. Martinez stating that JPM "[wa]s in default of its obligations as a confirming bank." (*Id*. Ex. 21.) Mr. Hill advised Ms. Martinez that the Brazilian Injunction was "irrelevant to [JPM's] obligation to [CB&T] as a confirming bank," and that CB&T "expect[ed] that full payment for the Letter of Credit w[ould] be sent to [CB&T] immediately without further delay." (*Id*.)

On April 3, 2017, Andrew Keen, Managing Director and Associate General Counsel at JPM, responded that the Injunction prevented JPM from paying CB&T, and thus, JPM was "not in a position to make payment at this time." (*Id*. ¶ 35, Ex. 22.) Mr. Keen further stated that JPM had "retained counsel in Brazil" and "would vigorously challenge the order and seek to have it vacated." (*Id*.)

In light of CB&T's preexisting business relationship with JPM, CB&T agreed to allow JPM additional time to obtain an order vacating the Injunction. (*Id*. ¶ 37.) But CB&T made clear—and has consistently maintained—that it had no obligation to grant JPM additional time to effect payment, and its willingness to do so was simply a courtesy, made in good faith reliance on representations by JPM employees, including Mr. Keen. (*Id*. ¶¶ 37-42.)

JPM understood that its obligation to pay CB&T was wholly independent from the underlying transaction between FirmGreen and Gas Verde, and their dispute in Brazil. (*See id*.) Indeed, in opposing the Injunction, JPM argued in court filings that "the documentary credit is granted absolute independence and autonomy in relation to the base contract of which it arose." (*Id*. ¶ 43, Ex. 23.)

### E.  CB&T Renews Its Demand, And JPM Makes A Partial Payment

In August 2020, CB&T learned that the Brazilian court had lifted the Injunction on May 4, 2020, and requested payment from JPM. (Hill. Decl. ¶¶ 44-45, Ex. 22.) JPM agreed to pay half of the balance, but refused to pay the rest on the grounds that it believed the Injunction was still in effect with respect to the remaining half. (*Id*. ¶¶ 46-48.) On September 3, 2020, JPM requested payment

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

instructions from CB&T.  (*Id.* ¶ 49, Ex. 24.)  On September 4, 2020, Mr. Hill sent an email to counsel for JPM, stating:

> We understand we will be receiving about half the principal amount owed on [JPM's] confirmation. . . .  Please note that receipt of this payment does not waive any of CB&T's rights to the remaining amount owed, interest, and costs and fees.  We look forward to immediate fulfillment of [JPM's] confirmation obligation to us.  (*Id.* ¶ 50, Ex. 25.)

Later that day, JPM made a single payment to CB&T in the amount of $2,433,360.  (*Id.* ¶ 51.)  Following JPM's partial payment, outside counsel for CB&T sent a letter to JPM requesting that the remainder of the balance owed be paid immediately.  (Declaration of Jason H. Tokoro ("Tokoro Decl.") ¶10, Ex. B.)

On September 17, 2020, JPM responded that the Injunction prevented it from paying the full amount owed under the L/C, and thus, JPM was not "in breach of its contractual obligations under the Confirmation."  (*Id.* Ex. C.)  JPM further stated that even if the Brazilian Injunction did not prohibit further payment on the L/C, "under NY UCC § 5-109, [JPM] is entitled to dishonor the request for payment based on the Beneficiary's material fraud (which binds CB&T since, as a mere assignee of the Beneficiary, CB&T is not among the specified third parties protected against the risk of forgery or fraud under NY UCC § 5-109(a)(1))."  (*Id.*)

As a result, CB&T was forced to file this action.

## III.    **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  A complaint may therefore survive a motion to dismiss "even if it appears 'that a recovery is very remote and unlikely.'"  *Twombly*, 550 U.S. at 555-

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1  56 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

2  **IV.   THE COURT HAS PERSONAL JURISDICTION OVER JPM**

3  Federal courts ordinarily follow state law in determining the bounds of their

4  jurisdiction over a party.  *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014).

5  California's long-arm statute permits a court to exercise personal jurisdiction to the

6  full extent permissible under the U.S. Constitution.  Cal. Civ. Proc. Code § 410.10.

7  Constitutional due process requires that a defendant "have certain minimum

8  contacts" with a forum state "such that the maintenance of the suit does not offend

9  'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v.*

10  *Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457,

11  463 (1940)).  Minimum contacts are shown if the defendant has "continuous and

12  systematic general business contacts" with a forum state (general jurisdiction), or if

13  the defendant has sufficient contacts arising from or related to specific transactions

14  or activities in the forum state (specific jurisdiction).  *Schwarzenegger v. Fred*

15  *Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (citation omitted).

16  Where a defendant moves to dismiss a complaint for lack of personal

17  jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is

18  appropriate.  374 F.3d at 800.  When the motion to dismiss is based on written

19  materials rather than an evidentiary hearing, the plaintiff is only required to make a

20  prima facie showing of jurisdictional facts through its pleadings and affidavits.  *Id.*

21  Courts apply a three-part test to determine whether a nonresident defendant

22  has sufficient contacts to be subject to specific personal jurisdiction in California:

23  (1) The non-resident defendant must purposefully direct his activities or
consummate some transaction with the forum or resident thereof; or
24  perform some act by which he purposefully avails himself of the
privilege of conducting activities in the forum, thereby invoking the
25  benefits and protections of its laws;
26

27  (2) the claim must be one which arises out of or relates to the
defendant's forum-related activities; and
28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

374 F.3d at 802 (citation omitted).

"The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.* Under the first prong, the purposeful availment standard applies to claims based on contract, and the purposeful direction standard applies to tort claims. *Id.* If the plaintiff establishes that the defendant has purposefully availed itself of the forum, the court's exercise of jurisdiction is presumptively reasonable. *See State Farm Mut. Auto. Ins. Co. v. Boermans*, No. 17cv1864 JM (BLM), 2018 WL 2684162, at *3 (S.D. Cal. June 5, 2018).   If the plaintiff satisfies the first two prongs, the burden shifts to the defendant to show that exercising jurisdiction would not be reasonable. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

JPM challenges personal jurisdiction on the grounds that it has not purposefully availed itself of this forum and CB&T's claims do not arise from JPM's activities in California.  JPM is wrong.

## A.    **JPM Purposefully Availed Itself Of The Privileges Of Doing Business In California**

To establish purposeful availment, courts ask "whether defendants have voluntarily derived some benefit from their interstate activities such that they 'will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts.'" *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020) (*Glob. Commodities*) (citing *Burger King*, 471 U.S. at 474-75).  As the Supreme Court explained in *Burger King*:

[W]e have emphasized the need for a "highly realistic" approach that recognizes that a "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction."  It is these factors—prior  negotiations and contemplated future consequences, along with the terms of the contract *and the parties' actual course of dealing*—that must be evaluated in determining

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400     FAX: (310) 552-8400

whether the defendant purposefully established minimum contacts within the forum.  *Burger King*, 471 U.S. at 479 (emphasis added) (citation omitted).

The Ninth Circuit has interpreted *Burger King* to mean that "courts must evaluate the parties' entire course of dealing, not solely the particular contract or tortious conduct giving rise to the claim, when assessing whether a defendant has minimum contacts with a forum." *Glob. Commodities*, 972 F.3d at 1108.

JPM argues that "the documents attached to the Complaint arguably show the involvement of [its] Chicago, New York, and Tampa offices – but they do not plead any conduct of JPM[] whatsoever by which [it] can be said to have purposefully availed itself of this forum." (Mot. at 9.)  JPM is misleading the Court.

As it is well-aware, at the time this dispute arose, JPM operated a Global Trade division out of Los Angeles.  JPM's Los Angeles office and its Los Angeles-based employees, including Mr. Fernando, Mr. De La Torre and Ms. Martinez, were integral to the ongoing negotiations and agreements between CB&T and JPM regarding its confirmation and payment obligations under the L/C.  Indeed, nearly all of the relevant communications, including numerous authenticated SWIFT messages, occurred between employees in the parties' Los Angeles offices.

JPM knows this.  Yet, remarkably, it ignores these facts and instead seeks to convince the Court that it lacks any connection to California because the original SWIFT confirmation that it provided to FirmGreen—*months before JPM's Los Angeles office undertook and subsequently breached its obligation to pay CB&T*— was sent from its New York office, and attached instructions on letterhead from its Chicago office that the Drawing Documents were to be presented to its office in Tampa, Florida.  (*See* Mot. at 9; Compl. Ex. 1.)  This is just more obfuscation.

JPM's prior, separate communications with FirmGreen do not change the fact that JPM used and relied on its Los Angeles office and employees to handle the entire transaction between CB&T and JPM.  (*See* Hill Decl. ¶¶ 13, 29, Exs. 3-4, 6-7,

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

8-12, 14, 16-17.)  JPM is ignoring the parties' true business relationship in an effort to obscure the true extent of its dealings with CB&T in California.  This is not a case where "the business relationship between the parties was fleeting or its center of gravity lay elsewhere."[3]  *Glob. Commodities*, 972 F.3d at 1108.  JPM was not merely interacting with a California business from afar; but rather, by conducting its transaction with CB&T through its Los Angeles office and employees, JPM was availing itself of the privileges of doing business *in California*.  These facts are more than sufficient to establish specific personal jurisdiction over JPM.[4]

**B.    CB&T's Claims Arise Out Of JPM's Forum-Related Activities**

The Ninth Circuit employs a "but for" test to determine if a claim arises out of forum-related activities.  *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). Under this test, CB&T must set forth facts showing that its claims would not have arisen "but for" JPM's contacts with California.  *Healy v. Wells Fargo Bank, N.A.*, No. 20-cv-01838-H-AHG, 2020 WL 7074939, at *3 (S.D. Cal. Dec. 3, 2020).[5]

---

[3] *See, e.g.*, *Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008) (holding that a single eBay sale to a California resident did not give rise to personal jurisdiction in California); *Thomas P. Gonzalez Corp., v. Consejo Nacional De Produccion De Costa Rica*, 614 F.2d 1247 (9th Cir. 1980) (holding that a contract resulting from public bidding in Costa Rica did not give rise to personal jurisdiction in California).

[4] CB&T maintains that JPM's extensive operations throughout California are sufficient to subject it to general jurisdiction, but the Court need not reach this issue because JPM is undoubtedly subject to specific personal jurisdiction in this case.

[5] Courts in this district have found a lack of sufficient forum-related contacts where, unlike in this case, the defendant's contacts with California are entirely unrelated to the dispute at issue.  *See, e.g., Bartel v. Tokyo Elec. Power Co., Inc.*, 371 F. Supp. 3d 769, 787 (S.D. Cal. 2019) (finding that plaintiffs failed to demonstrate how the alleged negligent activities of a Japanese energy company resulting from a tsunami disaster in Japan had any relation to the company's presence in California, as there was no evidence of relevant activities in California, such as "the maintenance, operations decisions, or any of the decisions during the disaster"); *Figi Graphics, Inc. v. Dollar Gen. Corp.*, 33 F. Supp. 2d 1263, 1267 (S.D. Cal. 1998) (finding that Dollar General's use of a California corporation to import goods was unrelated to

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400     FAX: (310) 552-8400

1   This test is easily satisfied here.  On October 20, 2016, JPM's Los Angeles

2   office sent a SWIFT message to CB&T confirming that the Drawing Documents

3   were in order and that it would pay CB&T on the maturity date.  (*See* Hill Decl. Ex.

4   4.)  Four days later, JPM's Los Angeles office sent another SWIFT message to

5   CB&T, confirming that it would pay the full amount owed under the L/C.  (*Id*. Ex.

6   7.)  Were it not for these SWIFT messages sent by JPM's Los Angeles office,

7   CB&T would have never entered into the Discount Agreement with FirmGreen or

8   paid FirmGreen the discounted amount of the L/C.  (*Id*. ¶¶ 4, 9-10.)

9   Bradesco subsequently made multiple requests to JPM's Los Angeles office

10  to extend the L/C maturity date, which JPM's Los Angeles office relayed to

11  CB&T's Los Angeles office.  (*Id*. ¶¶ 21-29, Exs. 11-12, 14, 16-17.)  All of the

12  discussions about Gas Verde's allegations of discrepancies in the Drawing

13  Documents likewise took place between JPM's and CB&T's Los Angeles offices.

14  (*Id*. ¶¶ 14-20, Exs. 8-10.)   And, most importantly, it was JPM's Los Angeles office

15  that sent the March 15, 2017 SWIFT message to CB&T stating that it would not

16  honor its contractual obligation to CB&T due to the Brazilian Injunction.  (*Id*. Ex.

17  20.)  This was the genesis of the parties' dispute, and is the basis of CB&T's claims.

18  Thus, but for the actions of JPM's Los Angeles office and employees, this

19  dispute would not have arisen.

20  **C.    The Exercise Of Jurisdiction Over JPM Is Reasonable**

21  Defendant bears the burden of establishing that the exercise of jurisdiction in

22  this case is unreasonable, and to do so Defendant must "present a *compelling case*

23  that the presence of some other considerations would render jurisdiction

24  unreasonable." *Ballard*, 65 F.3d at 1500 (quoting *Burger King*, 471 U.S. at 477).

25  No such compelling case exists here.

26

27  the underlying dispute of selling allegedly copyrighted products in Midwestern and

28  Southeastern states).

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

In determining "whether the exercise of jurisdiction comports with 'fair play and substantial justice,' and is therefore 'reasonable,'" the court considers the following seven factors: (1) the extent of the defendant's purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1114 (9th Cir. 2002) (citation omitted). [6]

JPM's argument that it did not purposefully inject itself into California's affairs fails.  (*See* Mot. at 9.)  As set forth above, JPM maintained a Los Angeles office, which played an integral role in this dispute.  Though the Global Trade division has since closed, JPM still maintains a corporate office in Los Angeles, through which it continues to conduct business.

JPM also claims it would be burdensome to litigate in California because "none of [its] witnesses are located here, none of the events occurred here, and it would be inefficient and costly to have this action proceed here."  (*Id*.)  All of these arguments fail.  The law clearly establishes that the obligation to pay under an L/C is independent from any dispute in the underlying transaction.  *See Exportacao*, 921 F.2d at 35 ("The issuing bank's obligation to honor drafts drawn by the beneficiary on a letter of credit is distinct from any duty owed by the buyer, its customer, under the sale of goods contract.").  And JPM's "obligation to pay [wa]s fixed upon presentation of the . . . documents specified in the [L/C]."  *First Commercial Bank v. Gotham Originals*, 64 N.Y.2d 287, 295 (1985).  There is no need "to resolve disputes or questions of fact concerning the underlying transaction."  *Id*.

---

[6] Courts "balance all seven factors, recognizing that none of the factors is dispositive in itself."  *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995).

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

And "the parties to a letter-of-credit transaction 'deal in documents, and not in goods, services and/or other performances to which the documents may relate.'" *Semetex Corp. v. UBAF Arab Am. Bank*, 853 F. Supp. 759, 770 (S.D.N.Y. 1994) (citation omitted).  Thus, "[a]n inherent advantage of letters of credit is that questions regarding dishonorment are easily answered—a court or potential litigant need merely look to the choreography and see if the dancers took the proper steps. This usually poses an objective question, with the answer obvious from the face of the documents and the terms of the letter of credit." *Hamilton Bank, N.A. v. Kookmin Bank*, 44 F. Supp. 2d 653, 662 (S.D.N.Y. 1999) (citation omitted).

Accordingly, this is not a case that will require extensive discovery or witness testimony; and JPM's conclusory statement that its unidentified witnesses reside outside of California goes nowhere.  Moreover, since employees in JPM's Los Angeles office were involved, to the extent witnesses are necessary, those witnesses most likely reside in California.  Indeed, at least one potential JPM witness, Ms. Martinez, still resides in California.  (*See* RJN Exs. B-C.)

JPM similarly offers no support for its claim that it would be inefficient and costly to litigate this case in California.  JPM not only has witnesses in California, but, as a multinational corporation with an ongoing corporate presence and multiple lawyers in this state, any additional cost associated with litigating here would be minimal.  This is especially true in light of the fact that all depositions and hearings are currently being conducted remotely due to the COVID-19 pandemic.

JPM next argues that there is no "special importance of this dispute to the state of California," as "[n]one of the parties is a California resident," and "the Confirmation stipulates that New York law shall apply." (Mot. at 9.)  But this ignores the fact that CB&T, as the harmed party, is a resident of California and California has a "'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King*, 471 U.S. at 473 (citation omitted).  This interest is even stronger in this case where JPM

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  utilized its California-based resources to harm CB&T.  And JPM's reference to New

2  York law is irrelevant.  This Court is more than capable of applying New York law,

3  and the choice of law provision does not operate as a forum selection clause.

4      This case centers in California, and there is no efficiency to be gained by

5  forcing the parties to litigate in another forum.  JPM cannot meet its burden of

6  establishing that this Court's exercise of personal jurisdiction is unreasonable.

7  **V.  JPM'S NEW YORK UCC ARGUMENTS FAIL**

8      **A.  The L/C Is Governed By UCP 600**

9      Having no basis to challenge CB&T's breach of contract claim, JPM instead

10  seeks to rewrite CB&T's claim as one for wrongful dishonor under New York UCC

11  section 5-111.  (*See* Mot. at 14.)  This argument fails on its face.

12      Under New York law, where an L/C expressly incorporates the UCP, the

13  UCP supplants Article 5 of the UCC.  *See Kools*, 872 F. Supp. at 71 (holding that

14  when the UCP is incorporated into a letter of credit, its provisions "displace Article

15  5 of the Uniform Commercial Code"); *see also ACR Sys., Inc. v. Woori Bank*, 232 F.

16  Supp. 3d 471, 477 (S.D.N.Y. 2017) ("[W]here . . . the parties designate that the

17  letter of credit is subject to rules of custom or practice, those rules govern, even in

18  the event of a conflict with Article 5.").

19      Indeed, UCC section 5-116(c) makes clear that Article 5 does not apply here:

20      Except as otherwise provided in this subsection, *the liability of an*

21  *issuer, nominated person, or adviser is governed by any rules of custom*

22  *or practice, such as the uniform customs and practice for documentary*

23  *credits, to which the letter of credit, confirmation, or other undertaking*

24  *is expressly made subject*.  If (1) this article would govern the liability
   of an issuer, nominated person, or adviser under subsection (a) or (b) of
   this section, (2) the relevant undertaking incorporates rules of custom or

25  practice, and (3) there is conflict between this article and those rules as

26  applied to that undertaking, *those rules govern except to the extent of*

27  *any conflict with the nonvariable provisions specified in subsection (c)*
   *of section 5-103*.  N.Y. U.C.C. Law § 5-116(c) (emphasis added).

28      Thus, Section 5-111 does not apply to CB&T's claims because the L/C

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   explicitly states that it is governed by UCP 600.  (*See* Compl. Ex. 1.)  JPM's liability

2   is governed by the UCP, and "[o]nly if the UCP is silent or ambiguous may a

3   provision of the UCC be consulted, and then only if it is consistent with the UCP."

4   *Kools*, 872 F. Supp. at 71.

5          Moreover, even if Section 5-111 did apply (it does not), JPM's argument

6   would still fail.  That section provides that "[i]f an issuer wrongfully dishonors or

7   repudiates its obligation to pay money under a letter of credit *before presentation*,

8   the beneficiary, successor, or nominated person presenting on its own behalf may

9   recover from the issuer the amount that is the subject of the dishonor or

10  repudiation."  N.Y. U.C.C. Law § 5-111(a) (emphasis added).  Here, JPM did not

11  dishonor the L/C prior to presentment.  To the contrary, CB&T presented the

12  Drawing Documents to JPM on October 17, 2016, and JPM accepted them and

13  undertook to pay CB&T in its October 20 and 24, 2016 SWIFT messages.  (Hill

14  Decl. ¶¶ 6-13, Exs. 2-7.)  By its own terms, Section 5-111 does not apply to claims

15  where, as here, the confirming bank breaches its payment obligations *after* accepting

16  the Drawing Documents and agreeing to make full payment.

17       **B.     CB&T Has Stated A Claim For Breach Of Contract**

18          Under New York law, "[t]he essential elements of a cause of action to recover

19  damages for breach of contract are the existence of a contract, the plaintiff's

20  performance pursuant to the contract, the defendant's breach of its contractual

21  obligations, and damages resulting from the breach."  *Meyer v. N. Shore-Long*

22  *Island Jewish Health Sys., Inc.*, 137 A.D.3d 878, 879 (N.Y. App. 2016).  JPM does

23  not even attempt to argue that CB&T has failed to allege facts supporting a breach

24  of contract claim.  Nor could it.

25          Whether CB&T's claim is fashioned as a breach of contract or a wrongful

26  dishonor is immaterial.  The claims are essentially the same.  To state a claim for

27  wrongful dishonor under the UCP, a plaintiff must show that: (1) defendant issued a

28  letter of credit for the benefit of plaintiff; (2) plaintiff timely presented conforming

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1  documents to defendant as required by the letter of credit; and (3) defendant failed
2  to pay plaintiff on the letter of credit.  *ACR Sys.*, 232 F. Supp. 3d at 478.

3       Courts have routinely recognized the interchangeable nature of a claim for
4  breach of contract and a claim for wrongful dishonor.  *See e.g.*, *Bath Iron Works*
5  *Corp. v. Westlb*, No. 02 Civ. 2272(RCC), 2004 WL 784856, at *3 n.5 (S.D.N.Y.
6  Apr. 12, 2004) ("A claim of wrongful dishonor is nearly identical to a breach of
7  contract claim.  Both causes of action require a showing of a breach of the
8  obligations set out in the letter of credit.  Therefore, these two claims will be
9  handled together."); *Exp.-Imp. Bank of the U.S. v. United Cal. Disc. Corp.*, 738 F.
10 Supp. 2d 1047, 1054 n.8 (C.D. Cal. 2010) ("Both claims require a showing of a
11 breach of the obligations set out in the instrument."); *see also ACE Am. Ins. Co. v.*
12 *Bank of the Ozarks*, No. 11 Civ. 3146(PGG), 2014 WL 4953566, at *1 (S.D.N.Y.
13 Sept. 30, 2014) (granting summary judgment on breach of contract claim for
14 defendant bank's failure to honor plaintiff's draw request on letter of credit issued
15 by defendant bank).  Indeed JPM's own authority involves a claim for breach of
16 contract (and declaratory relief) against a defendant who failed to make payment
17 under a letter of credit after accepting the drawing documents.  *See MSF Holding*
18 *Ltd. v. Fiduciary Tr. Co. Int'l*, 435 F. Supp. 2d 285, 287-88 (S.D.N.Y. 2006).

19      When JPM confirmed via authenticated SWIFT that it had received the
20 Drawing Documents presented by CB&T, that the Drawing Documents complied
21 with the L/C's requirements, and "payment w[ould] be made to [CB&T]," JPM was
22 then obligated—both contractually and under the UCP—to pay CB&T the full
23 amount due on maturity.  UCP 600, Art. 15(b) ("When a confirming bank
24 determines that a presentation is complying, it must honour or negotiate and forward
25 the documents to the issuing bank."); *Fertico Belgium, S.A. v. Phosphate Chems.*
26 *Exp. Ass'n*, 100 A.D.2d 165, 172 (N.Y. App. Div. 1984) ("A letter of credit
27 represents a separate *contract between the issuing or confirming bank and the*
28 *beneficiary . . . .*" (emphasis added)); *see also ACR Sys.*, 232 F. Supp. 3d at 478

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  (defendant is liable for wrongful dishonor under the UCP where plaintiff timely

2  presents conforming documents to defendant as required by the letter of credit and

3  fails to pay plaintiff on the letter of credit).

4      JPM breached its obligation to pay CB&T when the L/C matured on

5  March 13, 2017.  JPM's continued refusal to pay CB&T has injured it in an amount

6  no less than $2,434,156.75.  These facts establish a prima facie claim for breach of

7  contract.

8      **C.    CB&T's Breach Of Contract Claim Is Timely**

9      Since CB&T has not brought a claim under Article 5 of the UCC, Section 5-

10  115's one-year statute of limitations does not apply.  *See* N.Y. U.C.C. Law § 5-115

11  ("*An action to enforce a right or obligation arising under this article* must be

12  commenced within one year after the expiration date of the relevant letter of credit

13  or one year after the cause of action accrues, whichever occurs later." (emphasis

14  added)).  "As a result, the relevant New York statute of limitations is N.Y. C.P.L.R.

15  § 213(2), which provides a six-year limitations period for breach of contract

16  actions." *ACR Sys.*, 232 F. Supp. 3d at 477 (applying New York's six-year statute

17  of limitations for breach of contract to a wrongful dishonor claim under the UCP).

18      CB&T's claim could not have accrued before JPM's breach on March 13,

19  2017, when it failed to pay the full amount due under the L/C.  *See Velocity Invs.,*

20  *LLC v. McCaffrey*, 921 N.Y.S.2d 799, 804 (Nassau Dist. Ct. 2011) ("A cause of

21  action for breach of contract accrues and the statute of limitations begins to run

22  when the breach occurs or when a party to the agreement fails to perform an

23  obligation.").  Since CB&T filed this suit less than four years after JPM's breach,

24  well within the applicable statutory period, its breach of contract claim is timely.[7]

25

26

27  ─────────────────

28  [7] The same is true if the Court chooses to analyze CB&T's claim as a wrongful
    dishonor action.  *See ACR Sys.*, 232 F. Supp. 3d at 478.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1

### D.   CB&T Has Standing

2    JPM's only basis for asserting that CB&T lacks standing to enforce its right to

3    payment under the L/C is that it "is not one of the specifically-delineated parties

4    entitled under N.Y. U.C.C. Law § 5-111(a) to bring an action for wrongful

5    dishonor." (Mot. at 17.) But this argument depends entirely on JPM's meritless

6    argument that CB&T's breach of contract claim is actually for wrongful dishonor

7    under Section 5-111. It is not. Thus, JPM's standing argument similarly fails.

8    Since JPM's liability is governed by the UCP, not Section 5-111, CBT's

9    standing as an assignee is not limited by that section. *See* N.Y. U.C.C. Law § 5-

10   116(c) ("[T]he liability of [a] . . . nominated person . . . is governed by any rules of

11   custom or practice, such as the uniform customs and practice for documentary

12   credits, to which the letter of credit . . . is expressly made subject. . . [i]f . . . the

13   relevant undertaking incorporates rules of customs or practice . . . ."); *see also Ross*

14   *Bicycles, Inc. v. Citibank, N.A.*, 613 N.Y.S.2d 538, 541 (N.Y. Sup. Ct. 1994)

15   ("Although the UCC provides for remedies under a letter of credit in the context of

16   the underlying contract, the New York version of the UCC specifically provides that

17   the UCC does not apply to letters of credit where, as here, the parties agree to be

18   governed by the UCP.").

19   Moreover, JPM admits that "FirmGreen *assigned* its rights to the proceeds of

20   the [L/C] to [CB&T]." (Mot. at 19-21.) Indeed, JPM acknowledged and accepted

21   this assignment in October 2016, when it accepted the Drawing Documents and

22   expressly undertook to pay CB&T the full amount of the L/C. (*See* Hill Decl. ¶¶ 6-

23   13, Exs. 2-7.) And, under the UCP, as the valid assignee to the proceeds of the L/C,

24   CB&T has standing to bring a cause of action against JPM for its failure to pay the

25   full amount due. *See Optopics Labs. Corp v. Savannah Bank of Nigeria, Ltd.*, 816

26   F. Supp. 898, 905 (S.D.N.Y. 1993) ("Under the UCP . . . the assignment was proper

27   and plaintiff has standing.").

28   Again, JPM's own authority establishes CB&T's standing. But again, it seeks

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

to mislead the Court.  In *MSF Holding Ltd.*, plaintiff's subsidiary—*not plaintiff*—was assigned the right to receive the proceeds under a letter of credit governed by the UCP.  435 F. Supp. 2d at 296, 303.  Plaintiff argued that "notwithstanding, no 'rule of law' exists that would prohibit [a] 'parent company'—i.e., plaintiff—from enforcing [the letter of credit] on [its subsidiary's] behalf."  *Id.* at 303.  The court rejected this argument, noting that "a parent corporation and its subsidiary are regarded as legally distinct entities and a contract under the corporate name of one is not treated as that of both."  *Id.* (citation omitted).  Thus, the court held that plaintiff lacked standing, but noted that its subsidiary had standing to "bring suit against defendant for enforcement of the credit."  *Id.* at 305.

As an assignee of the L/C, CB&T likewise has standing to enforce its claims.

**E.     JPM's Arguments Are Barred By Equitable Estoppel**

Even if the UCC applied to CB&T's cause of action (it does not), JPM is equitably estopped from asserting the statute of limitations as a defense or challenging CB&T's standing to enforce its right to payment under the L/C.  Section 1-103 of the UCC provides that its rules are supplemented by the common law, including the common law doctrine of estoppel.  *See* N.Y. U.C.C. Law § 1-103(b).  "The purpose of equitable estoppel is to preclude a person from asserting a right after having led another to form the reasonable belief that the right would not be asserted, and a loss or prejudice to the other would result if the right were asserted."  *Matter of Shondel J. v. Mark D.*, 7 N.Y.3d 320, 326 (2006).

JPM has explicitly and repeatedly acknowledged that it is obligated to pay CB&T the full amount due on maturity and that it intended to do so when it resolved the Injunction in Brazil.  (Hill Decl. ¶¶ 6-13, 24, 34-51; Exs. 2-7, 14, 21-25.)  While CB&T has consistently maintained that the Injunction is irrelevant to JPM's independent obligation to pay CB&T as the confirming bank, in light of the parties' preexisting business relationship, CB&T reasonably and in good faith relied on JPM's representations and allowed it additional time to obtain an order from the

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

Brazilian court lifting the Injunction before making payment.  (*See id*. ¶¶ 34-43.) The injunction was lifted in May 2020, and JPM made a partial payment just days before CB&T filed suit—a clear admission that it was, and continues to be, obligated to pay CB&T.  (*See id.* ¶ 51.)  CB&T has waited long enough.  It is entitled to full payment.

JPM's procedural arguments are nothing more than bad faith gamesmanship and are likewise barred by the doctrine of equitable estoppel:

> The law imposes the doctrine as a matter of fairness.  Its purpose is to prevent someone from enforcing rights that would work injustice on the person against whom enforcement is sought and who, while justifiably relying on the opposing party's actions, has been misled into a detrimental change of position.

*Shondel J.*, 7 N.Y.3d at 326.  Having actively induced CB&T's reliance by repeatedly assuring it that full payment would be made when the Injunction was lifted, and consistently acknowledging its obligation to CB&T—including through its partial payment just four months ago—JPM may not now avoid its obligation by invoking procedural barriers to CB&T's suit.

## VI. <u>CB&T IS ENTITLED TO DECLARATORY RELIEF</u>

Under the Declaratory Judgment Act: "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, *whether or not further relief is or could be sought*."  28 U.S.C. § 2201(a) (emphasis added).  "In order to constitute an 'actual controversy,' the disagreement between the parties 'must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them.'" *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 301, 311 (S.D.N.Y. 2010).

To determine whether it should entertain a request for declaratory relief, a court must consider: "(1) whether the judgment will serve a useful purpose in

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400     FAX: (310) 552-8400

clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005).

By refusing to honor its obligation under the L/C, JPM has undermined one of the most critical aspects of L/C law—namely, the "independence principle," which provides that "the parties to a letter-of-credit transaction 'deal in documents, and not in goods, services and/or other performances to which the documents may relate.'" *Semetex Corp.*, 853 F. Supp. at 770 (citation omitted). "Thus, the issuing or confirming bank must honor a proper demand even though the beneficiary has breached the underlying contract; even though the insolvency of the account party renders reimbursement impossible; and notwithstanding supervening illegality, impossibility, war or insurrection." *Id.* (citation omitted). "This independence principle is universally viewed as essential to the proper functioning of letters of credit and to their particular value." *Id.*

The Brazilian Injunction, which involves a dispute between the underlying buyer and seller, FirmGreen and Gas Verde, has never provided JPM a basis to withhold payment from CB&T. JPM knows this, and in fact argued this before the Brazilian tribunal. Yet JPM has continued to claim that the Injunction prevents payment to CB&T, first arguing that it could not pay any of its obligation, and now claiming that it is only permitted to pay half. As a result, a judicial declaration is essential to clarify JPM's obligations, and the obligations of all confirming banks.

A declaration is also necessary to provide finality to this controversy. JPM has taken several contradictory positions on its obligation to pay CB&T. JPM expressly undertook to pay CB&T the full amount of the L/C in October 2016; and for years, it repeatedly confirmed its intention to do so. But in the last five months, JPM suddenly claimed that it was only required to pay half, and is now arguing in its Motion to Dismiss that CB&T is not entitled to any further payment under the L/C. Thus, declaratory relief is necessary to put an end to the uncertainty and

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

ongoing dispute between the parties.  *See e.g., ACE Am. Ins. Co.*, 2014 WL 4953566, at *19 (finding an "actual controversy" existed between a beneficiary and bank who continually refused to honor letter of credit, thereby justifying declaratory relief in addition to granting beneficiary's breach of contract claim).

## VII.   CB&T SHOULD BE GRANTED LEAVE TO AMEND

Should the Court be inclined to accept any of JPM's arguments, it should grant CB&T leave to amend its Complaint under Federal Rule of Civil Procedure 15(a)(2).  *See Royal Park Invs. SA/NV v. HSBC Bank USA, Nat'l Ass'n*, 109 F. Supp. 3d 587, 596 (S.D.N.Y. 2015) ("When a motion to dismiss is granted, '"[i]t is the usual practice . . . to allow leave to replead."'" (alteration in original) (citation omitted)).  Any pleading deficiencies are easily curable.  CB&T can allege additional facts to support this Court's jurisdiction over JPM, as evidenced by the extensive evidence submitted with this Opposition.  And, should this Court determine it necessary, CB&T can amend its Complaint to state a formal claim for wrongful dishonor under the UCP.

## VIII.  CONCLUSION

For the foregoing reasons, the Court should deny JPM's Motion to Dismiss in its entirety, or, alternatively, grant CB&T leave to amend its Complaint.


DATED:  January 7, 2021              Respectfully submitted,

                                     MILLER BARONDESS, LLP


                             By:  _____
                                     JASON H. TOKORO
                                     Attorneys for Plaintiff
                                     ZIONS BANCORPORATION, N.A. dba
                                     CALIFORNIA BANK & TRUST

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

<div style="text-align:center; writing-mode: vertical-rl;">

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

</div>

## CERTIFICATE OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 1999 Avenue of the Stars, Suite 1000, Los Angeles, CA 90067.

On January 7, 2021, I served true copies of the following document(s) described as:

**PLAINTIFF CALIFORNIA BANK & TRUST'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, FOR FAILURE TO STATE A CLAIM FOR RELIEF**

on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent from e-mail address aalamango@millerbarondess.com to the persons at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

**BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 7, 2021, at Los Angeles, California.

_____
Alexandria Alamango

**SERVICE LIST**
**CB&T v. JPMorgan**
**Case No. 3:20-cv-02048-AJB-JLB**
**Agreement for Email Service**

John M. Sorich
Heather E. Stern
Matthew Henderson
PARKER IBRAHIM & BERG LLP
695 Town Center Drive, 16th Floor
Costa Mesa, CA 92626

*Attorneys for Defendant*
JPMORGAN CHASE BANK, N.A.

Tel:  714.361.9550
Fax: 714.784.4190
Email: john.sorich@piblaw.com
          heather.stern@piblaw.com
          matthew.henderson@piblaw.com

Mark N. Parry (*Pro Hac Vice*)
David Rabinowitz (*Pro Hac Vice*)
Robert McFarlane (*Pro Hac Vice*)
MOSES & SINGER, LLP
405 Lexington Avenue, 12th Floor
New York, NY 10174-1299

*Attorneys for Defendant*
JPMORGAN CHASE BANK, N.A.

Tel:  212.554.7825
Fax: 212-554-7700
Email:  mparry@mosessinger.com
          drabinowitz@mosessinger.com
          rmcfarlane@mosessinger.com

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

488702.16

Case No. 3:20-CV-02048-AJB-JLB