1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                       SOUTHERN DISTRICT OF CALIFORNIA

10

11   ZIONS BANCORPORATION, N.A. dba          Case No.:  3:20-cv-2048-AJB-JLB
     CALIFORNIA BANK & TRUST, a
12   National Association,
                                             **ORDER GRANTING IN PART AND**
13                               Plaintiff,   **DENYING IN PART DEFENDANT'S**
                                             **MOTION TO DISMISS**
14   v.

15   JPMORGAN CHASE BANK, N.A., a            **(Doc. No. 15)**
     Delaware corporation,
16
                                 Defendant.

17

18         Before the Court is Defendant JP Morgan Chase Bank, N.A.'s ("Defendant JPMC")

19   motion to dismiss for lack of personal jurisdiction or, in the alternative, for failure to state

20   a claim for relief. (Doc. No. 15.) The motion is opposed by Plaintiff Zions Bancorporation,

21   N.A. d/b/a California Bank & Trust ("Plaintiff CB&T"). (Doc. No. 19.) Defendant JPMC

22   replied. (Doc. No. 20.) For the reasons given herein, the Court **GRANTS IN PART AND**

23   **DENIES IN PART** the motion to dismiss.

24   **I.      BACKGROUND**

25         This dispute arises from the international business dealings of an alternative energy

26   company located in Newport Beach, California, FirmGreen Energy International Holdings,

27   Inc. ("FirmGreen"). (Complaint ("Compl.") ¶¶ 2–3.) In 2016, FirmGreen entered into an

28   agreement to sell a biogas conditioning unit to Gas Verde, S.A. ("Gas Verde"), a Brazilian

                                              1

1   biogas company located in Brazil. (*Id.*) As part of the payment arrangements to finance

2   this transaction, Gas Verde obtained a letter of credit ("LC") from its bank in Brazil, Banco

3   Bradesco, S.A. ("Banco Bradesco"). (*Id.* ¶ 3.) Banco Bradesco issued the LC on April 1,

4   2016 for $4,867,516.75, with FirmGreen as the beneficiary. (*Id.*, Ex. 1.) To ensure that

5   FirmGreen would receive full payment, Defendant JPMC[1] agreed to serve as the advising

6   and confirming bank on the LC. (*Id.*) The initial maturity date of the LC was to be

7   December 12, 2016, but was subsequently extended to March 13, 2017. (*Id.* ¶ 26.)

8          Then comes Plaintiff CB&T. Plaintiff CB&T is a division of Zions Bancorporation,

9   N.A., offering full-service banking, and is headquartered in San Diego, California, with

10  offices throughout California, including in Irvine, Oakland, and Los Angeles. (*See* Jeffrey

11  Hill Decl. ¶ 2.) In September 2016, FirmGreen sought financing from Plaintiff CB&T for

12  its transaction with Gas Verde through a discounted payment under the LC. (*Id.* ¶¶ 3–4.)

13  Plaintiff CB&T was not willing to discount the LC based on Banco Bradesco's payment

14  obligation as the issuing bank, but Plaintiff CB&T advised FirmGreen that it would

15  evaluate the financing request on receipt of Defendant JPMC's authenticated SWIFT

16  confirmation. (*Id.* ¶ 4.)

17         On October 17, 2016, FirmGreen provided Plaintiff CB&T with the LC and drawing

18  documents, which Plaintiff CB&T then presented to Defendant JPMC. (*Id.* ¶ 6, Ex. 2.)

19  Plaintiff CB&T states that the next day, it received a SWIFT message from Defendant

20  JPMC indicating that, as the confirming bank, it was holding the original LC. (*Id.* ¶ 7, Ex.

21  3.) The SWIFT was signed, "REGARDS, JPM-L.A.," indicating it was sent from

22  Defendant JPMC's Los Angeles office. (*Id.*, Ex. 3.) Plaintiff CB&T states it received a

23  second SWIFT message from JPMC-LA on October 20, 2016, confirming the LC in the

24  amount of $4,867,516.75, to be paid on the maturity date of December 12, 2016. (*Id.* ¶ 8,

25

26  _____

27  [1] Defendant JPMC is a national banking association headquartered in Ohio. (*See* Defendant's Request for Judicial Notice ("RJN"), Ex. 3.) Defendant JPMC argues it sent a SWIFT message agreeing to act as the confirming bank from "CHASUS33," the SWIFT code corresponding to Defendant JPMC's New York office. (Defendant's RJN Ex. 1.)

28

2

1   Ex. 4.)

2         In reliance on Defendant JPMC's confirmation, Plaintiff CB&T entered into a Letter

3   of Credit Discount Agreement with FirmGreen on October 20, 2016 ("Discount

4   Agreement"). (Compl., Ex. 2.) Under the Discount Agreement, Plaintiff CB&T was to pay

5   FirmGreen the discounted value of the LC in exchange for the right to payment under the

6   LC. (*Id.*) Plaintiff CB&T states it corresponded with Defendant JPMC Los Angeles further

7   regarding (1) confirmation that payment was to be made to Plaintiff CB&T, (2) Banco

8   Bradesco's message that Gas Verde and FirmGreen had agreed to reduce the amount of the

9   LC to $2,433,760, (3) discrepancies in the drawing documents, (4) communication

10  regarding whether Gas Verde would only be paying FirmGreen $2,433,760 or

11  $4,867,516.75 on maturity, and (4) communication regarding extension of the maturity

12  date.

13        Meanwhile during these communications, Gas Verde obtained an injunction from a

14  Brazilian court (the "Brazilian Order") restraining and prohibiting Banco Bradesco and

15  Defendant JPMC (which has a presence in Brazil) from making payment under the LC and

16  the Confirmation on the basis of fraud in the underlying transaction. (Compl. ¶¶ 10, 29,

17  31.) The Brazilian court found there were "serious disparities" in the documents at issue in

18  the underlying transaction, including a "notorious controversy about the correct amount

19  specified in the invoice," and "at the very least, a serious documentary error . . . ."

20  (Defendant's RJN, Exs. 8–9.)

21        Thereafter, Plaintiff CB&T alleges Defendant JPMC failed to pay Plaintiff CB&T

22  when the LC matured. On March 15, 2017, Plaintiff CB&T received a SWIFT message

23  from Defendant JPMC stating it received the Brazilian order enjoining it from making any

24  payment under the LC. (*See* Hill Decl. ¶ 33, Ex. 20.) The SWIFT was signed "JPMORGAN

25  CHASE BANK, N.A. GLOBAL TRADE – LOS ANGELES." (*Id.*)

26        In August 2020, Plaintiff CB&T learned that the Brazilian court had lifted the

27  injunction on May 4, 2020, and requested payment from Defendant JPMC. (*See* Hill. Decl.

28  ¶¶ 44–45, Ex. 22.) Defendant JPMC agreed to pay half of the balance, but refused to pay

3

the rest on the grounds that it believed the injunction was still in effect with respect to the remaining half. (*Id.* ¶¶ 46–48.) Plaintiff CB&T then filed this action in San Diego Superior Court to obtain an order directing Defendant JPMC to pay the remaining balance on the LC. On October 16, 2020, JPMC removed this action to this Court on the basis of diversity jurisdiction. This order on this motion follows.

## II.     LEGAL STANDARDS

### A.      Motion to Dismiss for Lack of Personal Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a complaint for lack of personal jurisdiction. In opposing a Rule 12(b)(2) motion, the plaintiff bears the burden of establishing that jurisdiction is proper. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Where, as here, the court considers the motion without holding an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (quoting *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010)). In other words, "the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).

In resolving a Rule 12(b)(2) motion, the court may consider evidence outside the pleadings, including affidavits and other materials submitted on the motion. *See Daimler AG v. Bauman*, 571 U.S. 117 (2014) (noting that plaintiffs opposing the motion to dismiss for lack of personal jurisdiction submitted declarations and exhibits purporting to demonstrate defendant's contacts in the forum state); *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). "The plaintiff cannot 'simply rest on the bare allegations of the complaint,' but uncontroverted allegations in the complaint must be taken as true." *Mavrix Photo*, 647 F.3d at 1223 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (quotation omitted)). Furthermore, while the court may not assume the truth of allegations that are contradicted by affidavit, *Mavrix Photo*, 647 F.3d at 1223, the court draws all reasonable inferences from the complaint, and resolves all factual

4

1  disputes, in favor of the plaintiff. *Fiore v. Walden*, 688 F.3d 558, 575 (9th Cir. 2012) ("We

2  will draw reasonable inferences from the complaint in favor of the plaintiff where personal

3  jurisdiction is at stake, and will assume credibility.").

4       **B.**     **Motion to Dismiss for Failure to State a Claim**

5       A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint.

6  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and

7  plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ.

8  P. 8(a)(2). Plaintiffs must also plead, however, "enough facts to state a claim to relief that

9  is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The

10  plausibility standard thus demands more than a formulaic recitation of the elements of a

11  cause of action or naked assertions devoid of further factual enhancement. *Ashcroft v.*

12  *Iqbal*, 556 U.S. 662, 678 (2009). Instead, the complaint "must contain sufficient allegations

13  of underlying facts to give fair notice and to enable the opposing party to defend itself

14  effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

15       In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth

16  of all factual allegations and must construe them in the light most favorable to the

17  nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The

18  court need not take legal conclusions as true "merely because they are cast in the form of

19  factual allegations." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting

20  *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)) (internal quotation marks

21  omitted). Similarly, "conclusory allegations of law and unwarranted inferences are not

22  sufficient to defeat a motion to dismiss." *Pareto v. Fed. Deposit Ins. Corp.*, 139 F.3d 696,

23  699 (9th Cir. 1998).

24       Where dismissal is appropriate, a court should grant leave to amend unless the

25  plaintiff could not possibly cure the defects in the pleading. *Knappenberger v. City of*

26  *Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

27  **III.**   **REQUESTS FOR JUDICIAL NOTICE**

28       Both parties have filed requests for judicial notice, and these requests are considered

1    below. Federal Rule of Evidence 201 authorizes a court to take judicial notice of facts that

2    are "not subject to reasonable dispute" and are either (1) "generally known within the trial

3    court's territorial jurisdiction; or (2) can be accurately and readily determined from sources

4    whose accuracy cannot be questioned." Fed. R. Evid. 201.

5          **A.**    **Defendant JPMC's Requests**

6         First, Defendant JPMC asks the Court to take judicial notice of publicly available

7    information on SWIFT code "CHASUS33," available by searching the Business Identifier

8    Code (BIC) Directory of SWIFT at www.swift.com. The court takes judicial notice of this

9    document; it is publicly available and not subject to dispute. *See MAM Apparel & Textiles*

10   *Ltd. v. NCL Worldwide Logistics USA, Inc.*, No. 19CV3750NGGRML, 2020 WL 4336362,

11   at *2 (E.D.N.Y. July 28, 2020) (taking judicial notice of document from www.swift.com).

12        Second, Defendant JPMC requests judicial notice of (1) the Articles of Association

13   of JPMorgan Chase Bank, and (2) the Second Amended and Restated Articles of

14   Association of Zions Bancorporation, National Association. Both documents are available

15   through the U.S. Securities and Exchange Commission ("SEC") website. Courts may "take

16   judicial notice of the contents of relevant public disclosure documents required to be filed

17   with the SEC as facts 'capable of accurate and ready determination by resort to sources

18   whose accuracy cannot reasonably be questioned.'" *Yuen v. U.S. Stock Transfer Co.*, 966

19   F. Supp. 944, 945 n.1 (C.D. Cal. 1997). This request is thus granted.

20        Lastly, Defendant JPMC seeks to have the Court judicially notice three filings from

21   a Brazilian court. "[A] court may take judicial notice of public records of governmental

22   entities and authoritative sources of foreign law." *In re Ex Parte Application of Jommi*, No.

23   C 13-80212 CRB (EDL), 2013 WL 6058201, at *2 n.1 (N.D. Cal. Nov. 15, 2013). Here,

24   because the documents Defendant JPMC asks this Court to take judicial notice of "are all

25   either foreign court documents" or public records from a foreign government, the Court

26   grants the request. *Id.* The Court takes judicial notice of these documents for the fact of

27   their filing, but not for the truth of the matters asserted therein.

28   //

**B.      Plaintiff CB&T's Requests**

Plaintiff CB&T first requests judicial notice of the "Locations in the Americas" page on careers.jpmorgan.com. This document is the proper subject of judicial notice, as Defendant JPMC's offices, displayed on its website, can be readily and accurately determined. *See Wagner v. Terumo Med. Corp.*, No. 18CV1007-MMA (MSB), 2018 WL 6075951, at *3 (S.D. Cal. Nov. 21, 2018) ("Additionally, the Court finds that Exhibit B is also the proper subject of judicial notice, as Terumo's three affiliated offices in California, displayed on Terumo's website, can be readily and accurately determined.").

The next request is for the Court to judicially notice an article titled "*What is SWIFT? Tracking how money moves internationally from bank to bank thanks to the SWIFT messaging system*" by Chelsea Allison, published by Plaid.com, dated March 1, 2019. Judicial notice is appropriate solely for the existence and content of this article, but not for the truth of any statements asserted in the document. *See 2Die4Kourt v. Hillair Cap. Mgmt.*, LLC, No. 16-cv-1304-JVS-DFM, 2016 WL 4487895, at *1 n.1 (C.D. Cal. Aug. 23, 2016).

Finally, Plaintiff CB&T seeks judicial notice of the LinkedIn and ZoomInfo pages of former Defendant JPMC employee, Agnes Martinez. The Court concludes that these LinkedIn and ZoomInfo pages may not be properly subject to judicial notice because the employment of Agnes Martinez is not generally known within the Court's jurisdiction, and the information on these pages is not from a source whose accuracy cannot be reasonably questioned. *See* Fed. R. Evid. 201(b). This request is hereby denied.

**IV.   DISCUSSION**

The Court will first address the arguments pertaining to personal jurisdiction over Defendant JPMC before turning to the merits of the motion to dismiss for failure to state a claim.

**A.      Lack of Personal Jurisdiction**

Defendant JPMC argues this Court does not have general or specific personal jurisdiction over Defendant JPMC. (Doc. No. 15 at 14.) The Court disagrees.

//

Federal courts ordinarily follow state law in determining the reach of their jurisdiction over a party. *See Daimler*, 571 U.S. at 125. California's long-arm statute permits a court to exercise personal jurisdiction to the full extent permissible under the U.S. Constitution. *See* Cal. Civ. Proc. Code § 410.10. Two forms of personal jurisdiction exists that a court may use to exercise jurisdiction over an out-of-state defendant: (1) general personal jurisdiction; and (2) specific personal jurisdiction. Whether the Court has general or specific personal jurisdiction over Defendant JPMC will be analyzed below.

### 1.    General Personal Jurisdiction

General personal jurisdiction allows a court to hear any and all claims against a defendant regardless of whether the claims relate to the defendant's contacts with the forum state. *See Schwarzenegger*, 374 F.3d at 800 ("[A] finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities in the world."). For general jurisdiction to exist, a defendant's affiliations with the forum state must be "so 'continuous and systematic' as to render them essentially at home in the forum[.]" *Daimler*, 571 U.S. at 117 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). In the case of a corporation, "[t]he paradigmatic locations where general jurisdiction is appropriate . . . are its place of incorporation and its principal place of business." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015). "Only in an 'exceptional case' will general jurisdiction be available anywhere else." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014).

Here, Defendant JPMC's articles of association establish that its main office is in Columbus, Ohio. (*See* Defendant's RJN, Ex. 3.) In a brief footnote, Plaintiff CB&T maintains that Defendant JPMC's extensive operations throughout California rise to the level of general personal jurisdiction. (Doc. No. 19 at 19 n.4.) But for the reasons provided below, the Court need not reach this issue as the Court holds that it has specific personal jurisdiction over Defendant JPMC.

//

//

8

## 2.      Specific Personal Jurisdiction

With no general personal jurisdiction over Defendant JPMC, the next inquiry is whether specific personal jurisdiction exists. "The inquiry of whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (internal quotation omitted)). For specific jurisdiction to exist, the defendant's suit-related conduct must create a substantial connection with the forum State. *See Nissan Motor Co., Ltd. v. Nissan Comput. Corp.*, 89 F. Supp. 2d 1154, 1158 (C.D. Cal. 2000) ("Specific personal jurisdiction may be exercised when the nature and quality of the defendant's contacts with the forum state are significant in relation to the specific cause of action.") (internal quotation and citation omitted). This connection "must arise out of contacts that the 'defendant himself' creates with the forum State." *Walden*, 571 U.S. at 284. A defendant's affiliation with the plaintiff, or with persons who reside in the forum, standing alone, is insufficient to confer specific jurisdiction.

The Ninth Circuit employs a three-prong test to assess whether a defendant's contacts with the forum state are sufficient to subject it to specific jurisdiction: (1) the defendant "purposefully direct his activities" or otherwise "avail himself" of the forum state's laws, (2) the plaintiff's claim "arises out of or relates to the defendant's forum-related activities," and (3) the exercise of jurisdiction is reasonable. *See Schwarzenegger*, 374 F.3d at 802. Plaintiff CB&T bears the burden of satisfying the first two prongs. *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011). If Plaintiff CB&T does so, the burden then shifts to Defendant JPMC to present a "compelling case" that the exercise of jurisdiction would be unreasonable. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

Defendant JPMC argues the Complaint does not allege a single act of purposeful availment by Defendant JPMC in this forum, nor does it allege any events that even arguably arose out of Defendant JPMC's forum-related activities. (Doc. No. 15 at 16–17.)

9

1   Particularly, Defendant JPMC summarizes that this dispute involves a letter of credit issued

2   by a Brazilian bank, for a Brazilian company-applicant, to a California beneficiary as part

3   of payment for a shipment from Houston, Texas to Brazil, which ultimately was not paid

4   because the Brazilian Order enjoined payment. (*Id.*) On the other hand, Plaintiff CB&T

5   counters that sufficient minimum contacts exist between this forum and Defendant JPMC

6   because Defendant JPMC operated a Global Trade division out of Los Angeles, and its Los

7   Angeles-based employees were integral to the ongoing negotiations and agreements

8   between Plaintiff CB&T and Defendant JPMC regarding the confirmation and payment

9   obligations under the LC. (Doc. No. 19 at 18.) What is more, Plaintiff CB&T argues nearly

10  all of the relevant communications, including numerous authenticated SWIFT messages,

11  occurred between employees in the parties' Los Angeles offices. (*Id.*) The Court agrees

12  with Plaintiff CB&T.

### a)   Purposeful Availment

14  A plaintiff may satisfy the first prong in the specific jurisdiction analysis by

15  demonstrating that the defendant "purposefully directed" its conduct toward the forum

16  state, or "purposefully availed" itself of the privilege of doing business in the forum.

17  *Schwarzenegger*, 374 F.3d at 802. Courts typically utilize the purposefully directed

18  standard in tort cases, whereas the purposeful availment test is most useful for contract-

19  based claims. *Id.* This case is a breach of contract case, and so, the Court considers whether

20  Defendant JPMC purposefully availed itself of the privilege of doing business in the forum.

21  The Court concludes it has.

22  The "purposeful availment" inquiry usually involves evidence of the defendant's

23  actions in the forum to determine whether the defendant should reasonably anticipate being

24  hailed into the forum state court based on its contacts. *Schwarzenegger*, 374 F.3d at 802;

25  *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The purposeful

26  availment test is met where "the defendant has taken deliberate action within the forum

27  state or if he has created continuing obligations to forum residents." *Ballard*, 65 F.3d at

28  1498.

1    Here, Defendant JPMC argues that its role as the confirming bank was limited to

2  interactions from its Chicago, New York, and Tampa offices. (*See* Doc. No. 15 at 17.)

3  However, Defendant JPMC fails to address its significant business contacts from

4  California. Indeed, Defendant JPMC operated a Global Trade division out of Los Angeles.

5  From this Los Angeles office, Defendant JPMC communicated and negotiated its

6  agreement with Plaintiff CB&T. When Plaintiff CB&T was first provided the LC and

7  drawing documents, it received a SWIFT message from Defendant JPMC on October 18,

8  2016, verifying that Defendant JPMC was the confirming bank. (Hill Decl. ¶ 7.) This

9  SWIFT messaged was signed, "REGARDS, JPM-LA." (*Id.*) Then, on October 20, 2016,

10  Plaintiff CB&T received another SWIFT message from Defendant JPMC's Los Angeles

11  office, confirming the LC in the amount of $4,867,516.75. (*Id.* ¶ 8.) Relying on Defendant

12  JPMC's communications from Los Angeles, Plaintiff CB&T entered into the Discount

13  Agreement with FirmGreen, which would assign the rights to collect on the LC to Plaintiff

14  CB&T. (*Id.* ¶ 8.) After entering into the Discount Agreement, Plaintiff CB&T confirmed

15  with Defendant JPMC that it had become the beneficiary of the LC. (*Id.*) Defendant JPMC

16  responded to this message that it was the confirming bank, and would undertake to pay

17  Plaintiff CB&T. (*Id.*)

18    Subsequent interactions between Plaintiff CB&T and Defendant JPMC also confirm

19  Defendant JPMC's purposeful availment from Los Angeles. On November 7, 2016,

20  Plaintiff CB&T received a SWIFT message from Defendant JPMC, informing Plaintiff

21  CB&T that Gas Verge and FirmGreen had agreed to reduce the amount of the LC to

22  $2,433,760. (*Id.* ¶ 14.) Communications between Plaintiff CB&T and Defendant JPMC—

23  from the Los Angeles office—persisted over the next several days in efforts to sort out the

24  discrepancy between the $2,433,760 amount and the full $4,867,516.75 under the LC.

25  Lastly, Defendant JPMC sent from its Los Angeles office a SWIFT message informing

26  Plaintiff CB&T that it was enjoined by a Brazilian court from making any payment under

27  the LC. (*Id.* ¶ 33.) All in all, these numerous and critical communications between Plaintiff

28  CB&T and Defendant JPMC, from Los Angeles, confirm that Defendant JPMC

1    purposefully availed itself of the privilege of doing business in California.

2         In reply, Defendant JPMC argues that these communications were never pleaded in

3    the Complaint. But "[i]n determining issues of personal jurisdiction the court may look

4    beyond the four corners of the complaint." *Flintkote Co. v. Gen. Accident Assurance Co.*

5    *of Canada*, No. C-04-01827 MHP, 2004 WL 1977220, at *4 (N.D. Cal. Sept. 7, 2004).

6    Furthermore, Defendant JPMC claims "as a matter of law, communications in or with the

7    forum state do not establish a basis for personal jurisdiction over a confirming bank in a

8    letter of credit dispute." (Doc. No. 20 at 2.) But no Ninth Circuit authority is cited in support

9    of this proposition. Defendant JPMC cites to *RZS Holdings, AVV v. Commerzbank* to

10   reinforce its position, but this Eastern District of Virginia case is of no help to Defendant

11   JPMC. It is true that *RZS Holdings* states that a "beneficiary's status as a resident of the

12   forum state is not sufficient to establish personal jurisdiction over the banks involved in

13   issuing or confirming the letter of credit for the benefit of the beneficiary." 279 F. Supp.

14   2d 716, 720 (E.D. Va. 2003). Also true is that *RZS Holdings* concludes phone calls and fax

15   transmissions to the forum state are not sufficient contacts to establish purposeful

16   availment. But through all this, what Defendant JPMC ignores is that it is not simply an

17   entity sending communications from outside California. Rather, facts exist to show that

18   Defendant JPMC had sufficient contacts from within California.

19                 **b)    Claim Arising out of, or Related to, Forum Activities**

20        The second jurisdictional element of specific jurisdiction requires that the plaintiff's

21   claims arise out of the defendant's forum-related activities. *See Panavision International*

22   *v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998). The Ninth Circuit applies the "but for"

23   test to determine the "arising out of" requirement. *Gray & Co. v. Firstenberg Mach. Co.*,

24   913 F.2d 758, 761 (9th Cir. 1990) (internal citation omitted). A "plaintiff must show that

25   'but for' the defendant's forum-related conduct, the injury would not have occurred."

26   *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1053 (N.D. Cal. 2010) (citing

27   *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001)).

28        There is enough in the record for the Court to conclude that "but for" Defendant

12

1  JPMC's communications with Plaintiff CB&T from within California, Plaintiff CB&T
2  would not have relied on these communications to its detriment. Many of the relevant
3  events giving rise to Plaintiff CB&T's claim occurred in Los Angeles. Indeed, Defendant
4  JPMC's confirmation that it would pay Plaintiff CB&T on the maturity date, the
5  subsequent communications regarding the discrepancies of the amount due on the LC, and
6  Defendant JPMC's message to Plaintiff CB&T that it was enjoined from paying the amount
7  all occurred from California.

8       Accordingly, this factor is met for a finding of specific personal jurisdiction.

9                      **c)       Reasonableness**

10      Once the plaintiff has met the first two factors, the defendant bears the burden of
11  overcoming a presumption that jurisdiction is reasonable by presenting "a compelling case
12  that the presence of some other considerations would render jurisdiction unreasonable."
13  *Panavision Int'l, L.P.*, 141 F.3d at 1322 (quoting *Burger King Corp.*, 471 U.S. at 477). For
14  jurisdiction to be reasonable, it must comport with "fair play and substantial justice."
15  *Burger King Corp.*, 471 U.S. at 476. The reasonableness inquiry encompasses factors
16  including (1) the burden on the defendant, (2) the interests of the forum state, (3) the
17  plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in
18  obtaining the most efficient resolution of controversies, and (5) the shared interest of the
19  several states in furthering fundamental substantive social policies. *See Elecs. for Imaging,*
20  *Inc. v. Coyle*, 340 F.3d 1344, 1352 (9th Cir. 2003).

21      Because Plaintiff CB&T has demonstrated purposeful availment and that its claim
22  arises out of Defendant JPMC's contacts with California, it is now Defendant JPMC's
23  burden to demonstrate a "compelling case that the presence of some other considerations
24  would render jurisdiction unreasonable." *See Burger King*, 471 U.S. at 477. Defendant
25  JPMC has not met this burden.

26      In arguing that jurisdiction would be unreasonable, Defendant JPMC maintains that
27  none of its witnesses are located in California, none of the events occurred in California,
28  none of the parties are from California, and multiple alternative forums exist. (Doc. No. 19

at 17.) Defendant JPMC has not met its burden in establishing that personal jurisdiction would be unreasonable. First, as already stated, because the Los Angeles office of Defendant JPMC was involved, it is likely that any witnesses would in fact be located in California. Second, contrary to the assertions that none of the parties are from California, Plaintiff CB&T is headquartered in San Diego, California. Third, Defendant JPMC is a multi-national corporation, with a corporate presence in many states, and so, it has not demonstrated how litigating in California would subject it to unreasonable costs.

With the center of gravity in California, Defendant JPMC has failed to establish that personal jurisdiction would be unreasonable in California. For all these stated reasons, Defendant JPMC's motion to dismiss for lack of personal jurisdiction is hereby **DENIED**.

**B.      Defendant JPMC's Motion to Dismiss for Failure to State a Claim**

**1.      Breach of Contract Claim**

Having established that personal jurisdiction over Defendant JPMC exists, the Court proceeds to consider Defendant JPMC's motion to dismiss for failure to state a claim. (Doc. No. 15 at 20.)

Plaintiff CB&T's Complaint contains two claims for relief: (1) breach of contract, and (2) declaratory relief. (Compl.) Defendant JPMC argues that although Plaintiff CB&T styled its claim as breach of contract claim, it is actually a wrongful dishonor claim under New York Uniform Commercial Code ("NY UCC") §§5-111(a) and (c).[2] (Doc. No. 15 at 22.) Defendant JPMC points to the Complaint, which alleges that "the LC was presented for payment by [Plaintiff] and *dishonored* by Defendant by refusing to pay it." (Compl.

---

[2] NY UCC § 5-111(a) states, "[if] an issuer wrongfully dishonors or repudiates its obligation to pay money under a letter of credit before presentation, the beneficiary, successor, or nominated person presenting on its own behalf may recover from the issuer the amount that is the subject of the dishonor or repudiation. . . ."

NY UCC § 5-111(c) provides, "[i]f an adviser or nominated person other than a confirmer breaches an obligation under this article or an issuer breaches an obligation not covered in subsection (a) or (b) of this section, a person to whom the obligation is owed may recover damages resulting from the breach, including incidental but not consequential damages, less any amount saved as a result of the breach."

1    ¶ 28 (emphasis added).) In characterizing Plaintiff CB&T's claim as one for wrongful

2    dishonor, Defendant JPMC then argues (1) that any wrongful dishonor claim is barred by

3    the applicable statute of limitations, and (2) Plaintiff CB&T lacks standing to sue under the

4    NY UCC. (Doc. No. 15 at 23, 25.) In response to Defendant JPMC's argument that the

5    breach of contract claim is actually a wrongful dishonor claim, Plaintiff CB&T contends

6    that the LC is covered by Uniform Customs and Practice for Documentary Credits ("UCP")

7    600. (Doc. No. 19 at 24.) Thus, Plaintiff CB&T goes on to argue that NY UCC § 5-111

8    does not apply because the LC explicitly states that it is governed by UCP 600. After the

9    Court's review of the LC dated April 1, 2016, the Court agrees with Plaintiff CB&T.

10          First, the Court is not persuaded that the NY UCC applies under these circumstances.

11   First and foremost, the LC at issue, in addition to the Discount Agreement between

12   FirmGreen and Plaintiff CB&T, both expressly note that the LC is subject to UCP 600. In

13   the LC, Defendant JPMC themselves state that the "applicable rules" are the "UCP latest

14   version" and that the LC is "subject to ICC Pub. 600." Moreover, in the Discount

15   Agreement between FirmGreen and Plaintiff CB&T, FirmGreen "represent[ed]" and

16   "warrant[ed]" that "the LC . . . is an irrevocable letter of credit duly issued by the issuing

17   bank in our favor as a payment mechanism for the sale of goods and is subject to the

18   Customs and Practice for Documentary Credits, 2007 Revision, International Chamber of

19   Commerce Publication No. 600 (or any revision thereof in effect at the date of issuance of

20   the Credit) . . . ." (Doc. No. 1-2 at 28–29.)

21          Second, Defendant JPMC appears to believe that a wrongful dishonor claim, and a

22   breach of contract claim are mutually exclusive. Here, Plaintiff CB&T is the master of its

23   Complaint, and Defendant JPMC cites to no authority showing that Plaintiff CB&T must

24   proceed with either a wrongful dishonor claim or a breach of contract claim. In fact, courts

25   have recognized the similar nature of both claims in letter of credit disputes. *See Todi*

26   *Exports v. Amrav Sportswear Inc.*, No. 95 CIV. 6701 BSJ, 1997 WL 61063, at *2

27   (S.D.N.Y. Feb. 13, 1997) ("Count Three alleges breach of contract against Habib for

28   wrongfully dishonoring the L/C."); *Coop. Agricole Groupement De Producteurs Bovins*

1   *De L'Ouest v. Banesto Banking Corp.*, No. 86 CIV. 8921 (PKL), 1989 WL 82454, at \*19

2   (S.D.N.Y. July 19, 1989), aff'd sub nom. *Coop. Agricole v. Banesto*, 904 F.2d 35 (2d Cir.

3   1990) ("Specifically, GPBO claims that Banesto breached its contract with GPBO when it

4   refused to pay on the GPBO letter of credit and that it otherwise wrongfully dishonored its

5   alleged obligation to pay thereon.").

6         Having found the NY UCC inapplicable, Defendant JPMC's argument regarding the

7   statute of limitations and standing—which hinge on the NY UCC—necessarily fail. First,

8   as to the statute of limitations issue, Defendant JPMC does not argue that the statute of

9   limitations has passed under any other provision other than § 5-111 of the NY UCC.

10  Because the Court has already ruled that the NY UCC does not apply, these arguments will

11  not be addressed. Second, as to standing, Defendant JPMC argues that Plaintiff CB&T

12  lacks standing under the NY UCC. Specifically, under NY UCC § 5-111(a), "if an issue

13  wrongfully dishonors . . . its obligation to pay money under a letter of credit before

14  presentation, the ***beneficiary, successor or nominated person*** may recover from the issuer

15  the amount that is the subject of the dishonor . . . ." (emphasis added). Defendant JPMC

16  argues that Plaintiff CB&T has no standing because it does not fall within one of the

17  categories of "beneficiary, successor or nominated person." Although the Court need not

18  consider arguments regarding the inapplicable NY UCC, the Court will briefly address

19  standing because Defendant JPMC cites to the applicable UCP in defense of its position.

20  In arguing that Plaintiff CB&T may not be a "beneficiary," Defendant JPMC cites to the

21  UCP to assert that a letter of credit may not be transferred to another beneficiary unless it

22  explicitly provides that it is transferrable. (Doc. No. 15 at 27.) However, "[t]he UCP

23  differentiates between transfer of a letter of credit, which would entail transferring the duty

24  to deliver the documents to the bank, and merely assigning the ***proceeds*** of a letter of credit,

25  without any concomitant obligation of performance." *Optopics Lab'ys Corp. v. Savannah*

26  *Bank of Nigeria, Ltd.*, 816 F. Supp. 898, 903 (S.D.N.Y. 1993) (emphasis added). What

27  Defendant JPMC ignores in making its standing argument are the allegations that Plaintiff

28  CB&T was the assignee of the ***proceeds*** of the LC, not the letter of credit itself. This is a

16

1    fact which even Defendant JPMC admits. (Doc. No. 15 at 27 ("Rather, at most, FirmGreen

2    assigned its rights to the ***proceeds*** of the LC to Plaintiff.") (emphasis added)). Therefore,

3    the assignment of the LC presents no impediment to standing. Accordingly, the motion to

4    dismiss based on Defendant JPMC's statute of limitations and standing arguments is

5    **DENIED**.

6                   **2.    Declaratory Relief**

7         Next, Defendant JPMC seeks to dismiss Plaintiff CB&T's declaratory relief claim

8    as duplicative of the breach of contract claim. (Doc. No. 15 at 31.) Where a claim for

9    declaratory relief is merely duplicative of other causes of action asserted by a plaintiff,

10   dismissal is proper. *See Swartz v. KPMG LLP*, 476 F.3d 756, 765-66 (9th Cir. 2007); *B &*

11   *O Mfg., Inc. v. Home Depot U.S.A., Inc.*, No. C 07-02864 JSW, 2007 WL 3232276, at *7

12   (N.D. Cal. Nov. 1, 2007) (dismissing declaratory relief claim that was duplicative of

13   plaintiff's breach of contract claim); *EFG Bank AG, Cayman Branch v. AXA Equitable Life*

14   *Ins. Co.*, 309 F. Supp. 3d 89, 100 (S.D.N.Y. 2018) (same).

15        Here, Plaintiff CB&T's claim for declaratory relief is essentially the same as its

16   breach of contract claim. Plaintiff CB&T's wants "a judicial declaration . . . to determine

17   the parties' right and obligations in light of this dispute. Plaintiff contends that it has the

18   right to payment under the LC, and Defendant contends the opposite." (Compl. ¶ 50.) But

19   a declaration of the obligations under the LC is duplicative of the issues that will already

20   be determined through the breach of contract claim. Defendant JPMC's motion is therefore

21   **GRANTED WITHOUT LEAVE TO AMEND** as to the declaratory relief claim.

22   **V.    CONCLUSION**

23        For all these reasons, the motion to dismiss is **GRANTED IN PART AND**

24   **DENIED IN PART**. (Doc. No. 15.) The motion is denied to the extent Defendant JPMC

25   seeks dismissal based on lack of personal jurisdiction, statute of limitations, or standing

26   issues. However, the motion is granted as to Plaintiff CB&T's declaratory relief claim.

27        ///

28        ///

1        Accordingly, that claim is **DISMISSED WITHOUT LEAVE TO AMEND**.

2

3        **IT IS SO ORDERED.**

4    Dated:  August 3, 2021

5                                          Hon. Anthony J. Battaglia
6                                          United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3:20-cv-2048-AJB-JLB